[Cite as *State v. Carter*, 2017-Ohio-1328.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                          :        APPEAL NO. C-150625
                                                 TRIAL NO. B-1500483
    Plaintiff-Appellee,            :
                                                 *O P I N I O N.*
  vs.                                   :

BRANDON CARTER,                         :

    Defendant-Appellant.           :



Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed and Cause Remanded

Date of Judgment Entry on Appeal:  March 31, 2017


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}   Defendant-appellant Brandon Carter has appealed from the trial court's entry convicting him of robbery and sentencing him to seven years' imprisonment.

{¶2}   In five assignments of error, Carter argues that the prosecutor made improper remarks during closing arguments; that he received ineffective assistance from his trial counsel; that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence; that the trial court erred in failing to grant his Crim.R. 29 motion for an acquittal; and that the trial court imposed an improper sentence.

{¶3}   Finding no merit to Carter's arguments, we affirm the judgment of the trial court.  But we have found a clerical error in its judgment entry, so we remand this cause with instructions for the trial court to correct that clerical error.

### *Background and Procedure*

{¶4}   On January 23, 2015, Alexander Ford and Johnell Amison were robbed at gunpoint during a potential drug sale.  For his role in these crimes, Carter was charged with two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), two counts of robbery in violation of R.C. 2911.02(A)(2), two counts of felonious assault in violation of R.C. 2903.11(A)(2), one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(A).

{¶5}   The case proceeded to a jury trial.  At trial, Ford testified that he and Carter had been longtime friends, and that on January 23, 2015, Carter called him

asking to borrow money for car repairs. Ford explained that he already owed Carter approximately $80, and that he told Carter that he would repay the money he owed, as well as loan Carter additional money. Ford further told Carter that he had a friend who was selling marijuana, and Carter stated that he knew someone who might be interested in purchasing it. The two arranged to meet later in the day in the parking lot of a Frisch's restaurant.

{¶6} Ford testified that the meeting took place in his car. Ford and Amison sat in the front of the car. Carter entered and sat in the back seat of Ford's car, and shortly thereafter he was joined by an unknown male. Carter asked Ford for the money that he owed him and inquired about the marijuana that was for sale. Both Ford and Amison produced marijuana that they had on their persons. When Ford turned to the back seat to discuss a potential deal, he saw that both Carter and the unknown man had produced guns and were pointing them at him and Amison. Carter and Amison were told to "give us what you got."

{¶7} One of the armed men fired a warning shot into the front seat. Ford panicked and gave his assailants everything that he had on his person. The men then instructed Ford to put the car in reverse. While Ford complied, Amison jumped out of the vehicle. Ford then also jumped out as two additional shots were fired from the back seat. As Ford grabbed onto the trunk of the car, he saw both Carter and the unknown man climb into the front of the vehicle. One of the men fired a shot at him through the back windshield, and eventually Ford let go of the car as the pair drove away. Ford suffered injuries and was transported to a hospital.

{¶8} Cincinnati Police Officer Robert Perry testified that he responded to the scene of these crimes and later spoke with Ford in the hospital. From his

discussion with Ford, Officer Perry developed Carter as a suspect and put together a photographic lineup. After viewing the lineup, Ford identified Carter as one of his assailants.

{¶9} Officer Perry further testified that he issued a warrant for Carter's arrest, and that Carter was arrested on January 26, 2015. During an interview with Officer Perry, Carter denied participating in the crimes committed against Ford and Amison, and stated that he had been picking up his car from a local car dealership when the crimes took place.

{¶10} After deliberating for several days, the jury returned a verdict finding Carter guilty of robbery in count two. The jury was unable to reach a verdict on the remaining seven charges.

### Prosecutorial Misconduct

{¶11} In his first assignment of error, Carter argues that the prosecutor made improper remarks to the jury during closing argument that prejudiced his right to a fair trial.

{¶12} Prosecutorial misconduct will only serve as grounds for error if it deprived the defendant of a fair trial. *State v. Smith*, 130 Ohio App.3d 360, 366, 720 N.E.2d 149 (1st Dist.1998). Accordingly, the remarks must have been improper and have prejudicially affected the defendant's substantial rights. *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 42, quoting *State v. Jones,* 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 200. Prosecutors are normally entitled to a certain degree of latitude during closing argument. *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). Statements made during closing argument must not be evaluated in isolation, but in light of the entire closing argument. *State*

*v. Kelly*, 1st Dist. Hamilton No. C-010639, 2002-Ohio-6246, ¶ 22, citing *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). A defendant's failure to object to an allegedly improper statement by the prosecutor forfeits all but plain error. *Kelly* at ¶ 22. To establish plain error, a defendant must demonstrate that the outcome of the proceedings would have been different but for the alleged misconduct. *Id.* Carter did not object to any of the statements that he now challenges, so we examine them under the plain-error standard.

{¶13} Carter first argues that the prosecutor improperly stated during closing argument, in reference to Ford's testimony, that "[i]f he's credible, he's credible. If you believe him, you should believe his whole story." This comment was not objected to. While on its face this comment could be viewed as an erroneous statement of law, when viewed in context it was not improper. Defense counsel had argued in closing argument that portions of Ford's testimony had been accurate, but not those portions of testimony in which Ford identified Carter as a participant in the crimes committed against him. The above comment was made by the prosecutor in response to defense counsel's argument. A fair interpretation is that the prosecutor was urging the jury to believe all of Ford's testimony. The prosecutor did not tell the jury that it must believe Ford's whole story, only that it should. Further, to the extent that this comment could be deemed improper, the trial court gave the jury an instruction which cured any misstatement of the law, stating that "[y]ou may believe or disbelieve all or any part of the testimony of any witness. It is your duty to decide what testimony to believe and what testimony not to believe." The jury was appropriately instructed on the law and is presumed to have followed the court's instructions.

{¶14} Carter additionally challenges the prosecutor's statement that "[a] guilty person denies being somewhere. [A] guilty person denies it to get out of trouble." Again, this comment was made in reference to the testimony offered by Ford, and it was not objected to. When the statement is viewed in context, it is apparent that the prosecutor was asking the jury to consider Ford's credibility in light of his actions. This was not improper.

{¶15} Carter next challenges the prosecutor's comments about the lack of evidence supporting the statement that Carter had given to Officer Perry. He argues that these comments shifted the burden of proof to him to prove that he had not been involved in the crimes. During trial, Officer Perry testified that Carter had told him that he had been picking up his car from the dealership when these crimes were committed. Carter told Officer Perry that he got to the dealership right as the service department was closing. Officer Perry admitted that he did not verify Carter's statements with the dealership.

{¶16} The following exchange took place during closing argument:

Prosecutor: He tells Officer Perry—the defendant tells Officer Perry, I wasn't there. I was going to get my car at the dealership. I got there right before it closed. What dealership closes on a weekday or Friday at 5:30 p.m.? The dealership wasn't closed. He didn't even go get his car. Where is the evidence he went to go get his car? There is none. But there is evidence he was there at the Frisch's robbing and shooting people. Hey, Officer Perry, look, I didn't do it. I was there. I was there to talk to my friend. I did not do this. I didn't know this dude was

gonna show up with a gun and rob him. I didn't know that. Here's his name. Here's his number.

Defense Counsel: I'm going to object.

The Court: Approach. (Sidebar follows.)

Defense Counsel: First let me apologize for interrupting your closing. I want the record to reflect I've lodged an objection for the record with respect to his Fifth Amendment Right. There was [a] Miranda Warning, waived and signed but he didn't say anything. He has that right to not say a word. I just wanted to lodge that objection.

Prosecutor: My response is that's in trial, has nothing to do with an interview with the police. He waived his Miranda warning, doesn't rise to the potential of misconduct of—

The Court: You're not going to comment in closing argument that the defendant didn't testify?

Prosecutor: Of course not. I have been doing this almost 13 years. I'm not stupid. (Sidebar concluded.)

Prosecutor: Officer Perry, I didn't do it. It was a mistake. It was a misunderstanding. Mr. Ford's confused. He didn't say any of that. He said I wasn't there. Why would you deny being somewhere? To get out of trouble, not get busted. Not go down for robbing your friend because you know he can I.D. you. I wasn't there. I was picking up my car. You've got to rely on the evidence that you have. The only evidence in this case is that the defendant did it. That's the only evidence.

{¶17} While Carter did object during the prosecutor's commentary, the record indicates that he objected because he believed that the prosecutor was about to improperly remark on his failure to testify on his own behalf. Carter did not object to the prosecutor's comments concerning a lack of evidence that Carter had actually gone to the car dealership to get his car. Consequently, we review the prosecutor's comments for plain error.

{¶18} We find that the prosecutor's remarks were a fair commentary on the evidence presented at trial, and that they did not shift the burden of proof to Carter. The prosecutor was pointing out that, in his interview, Carter denied being at the scene, but rather claimed to be at a car dealership. The prosecutor was arguing that Carter did not tell the officer that he was there but had not known what was going to happen. Rather, Carter denied being there at all. The prosecutor was permitted to argue that the other evidence introduced at trial corroborated Ford's testimony and that the evidence did not support Carter's statement to the police.

{¶19} Carter last argues that the prosecutor denigrated defense counsel during closing arguments. The latitude afforded a prosecutor does not permit denigration of the role of defense counsel or a personal attack on counsel. *Smith*, 130 Ohio App.3d at 368, 720 N.E.2d 149.

{¶20} In the rebuttal portion of closing argument, the prosecutor made the following comments: "Can you imagine if Officer Perry had taken glass from that car, could you imagine what [defense counsel] would have to say to him on cross-examination?"; "You know another man had his car. You know this car was in a wreck. How can you tell us that glass isn't from the wreck? Could you imagine what [defense counsel] would have done with that?"; "You found fragments of a bullet.

How do you know that this car wasn't in a gun fight the four days it was missing? Could you imagine how [defense counsel] would [have] made Officer Perry look right then[?]"; and "I also think it's a little interesting that defense wants to argue that we don't have Johnell Amison so we can't have a guilty conviction for the fact that this happened. How do we win a murder case?" These comments were made in response to defense counsel's argument that the police did not do enough to investigate.

{¶21} The comments in this case are distinguishable from those in cases in which the prosecutor was found to have denigrated defense counsel. In *State v. Getsy*, 84 Ohio St.3d 180, 194, 702 N.E.2d 866 (1998), the Ohio Supreme Court considered the following comments made by the prosecutor in closing argument, after noting that defense counsel had not raised an objection: "[when] you have no defense you attack the police, you attack the prosecutor, you attack everybody. * * * You want to look at things that aren't important to this particular case, you want to deflect, you want to look for something that doesn't exist, you want smoke so he can't be seen." The court held that these comments denigrated defense counsel for doing her or his job, and that they were error. *Id.* The court found, however, that these statements were not pervasive and did not rise to plain error. *Id.*

{¶22} In *State v. Alfieri*, 132 Ohio App.3d 69, 84-85, 724 N.E.2d 477 (1st Dist.1998), the prosecutor stated in closing argument, "It's interesting they don't want you to examine everything. Oh, no, let's hide from the final report that Lieutenant Daudistel filed. We don't even introduce that. We won't have that blown up, because the preliminary reports which were filed and made up in the middle of the—[the prosecutor was then interrupted by defense counsel's objection]." The *Alfieri* court held that the prosecutor's insinuation that defense counsel hid evidence

was an improper denigration of defense counsel. *Id.* at 85. The court, however, did not find the statements so prejudicial as to deprive the defendant of a fair trial.

{¶23} In *Getsy* and *Alfieri*, the prosecutor directly attacked defense counsel by criticizing counsel's tactics and, in *Alfieri*, by insinuating that counsel had actually committed misconduct by attempting to hide evidence. Unlike the prosecutors' comments in *Getsy* and *Alfieri*, a review of the record in this case indicates that the prosecutor's comments were made in response to arguments raised by defense counsel during his portion of closing argument. Defense counsel had questioned the effort that Officer Perry put forth during the investigation and had highlighted areas in which he felt the officer's investigation had been lacking. The prosecutor's remarks were a fair response to these comments and did not rise to the level of denigration. *See State v. Hughes,* 1st Dist. Hamilton No. C-030489, 2005-Ohio-2453, ¶ 30.

{¶24} The prosecutor did not commit any misconduct during closing argument that prejudiced Carter's right to a fair trial. The first assignment of error is overruled.

### *Ineffective Assistance*

{¶25} In his second assignment of error, Carter argues that he received ineffective assistance from his trial counsel.

{¶26} Counsel will not be considered ineffective unless her or his performance was deficient and caused actual prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Counsel's performance will only be deemed deficient if it fell below an objective standard of reasonableness.

*Strickland* at 688; *Bradley* at 142. A defendant is only prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceedings would have been different but for the deficient performance. *Strickland* at 694; *Bradley* at 142. A reviewing court must indulge a presumption that counsel's behavior fell within the acceptable range of reasonable professional assistance. *Strickland* at 689; *Bradley* at 142.

{¶27} Carter first argues that counsel was ineffective for admitting during closing argument that Carter had been present for the robbery, because that admission contradicted the statement given by Carter in his interview with Officer Perry. During closing argument, defense counsel addressed Ford's testimony that Carter had been involved in the robbery. Counsel argued that, if the jury were to believe Ford's testimony that Carter was present at the scene, it should also find that Carter had been a victim and that the sole assailant had been the unknown male seated in the back seat of Ford's car with Carter. Such an argument is an acceptable trial strategy that should not be second-guessed. *See Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, at ¶ 50-51.

{¶28} Carter next argues that his counsel was ineffective for admitting that the unknown assailant had carried a weapon and that Amison had been shot. Counsel's concession that the unknown assailant had possessed a weapon was not unreasonable in light of counsel's argument that Carter had also been a victim, rather than a participant, in the crimes. And counsel's statement that Amison had been shot was in line with the evidence introduced at trial and did not prejudice Carter in any manner.

11

{¶29} Carter next argues that he was prejudiced by the following comment that defense counsel made during closing argument: "What is the number one problem in our community? Getting witnesses to come forward for fear of retaliation." Carter argues that this comment allowed the jury to infer that he had had a hand in preventing other witnesses from testifying. But, when viewed in context, it is apparent that defense counsel made this statement to argue that Carter had been harmed when other witnesses would not testify because they were afraid of the unknown assailant. Immediately preceding this comment, defense counsel stated, "What makes sense? Reason and common sense is that Mr. Carter is caught off guard like everyone else." Defense counsel's statement was reasonable, and it did not prejudice Carter.

{¶30} Having found that Carter did not receive ineffective assistance from his trial counsel, we overrule the second assignment of error.

### Sufficiency and Weight

{¶31} In his third assignment of error, Carter contends that his robbery conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶32} When reviewing the sufficiency of the evidence, this court is not permitted to weigh the evidence. Rather, we must view all evidence and reasonable inferences in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In contrast, when reviewing the manifest weight of the evidence, we must review the entire record, weigh the evidence, and consider the credibility of the

witnesses to determine whether the trier of fact lost its way and committed such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶33} Carter was found guilty of robbery under R.C. 2911.02(A)(2). This statute provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." When viewed in the light most favorable to the prosecution, the evidence presented at trial established that Carter robbed Ford of drugs and money at gunpoint, shot at him, and fled in Ford's car. The jury, which was in the best position to view and judge the credibility of the witnesses, was entitled to believe Ford's testimony identifying Carter and to reject the statement that Carter had given to Officer Perry denying participation in the crimes. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶34} We find that Carter's conviction for robbery was supported by both the sufficiency and the weight of the evidence. A rational trier of fact could have found the elements of robbery were proven beyond a reasonable doubt. Further, a review of the entire record establishes that the jury did not lose its way in finding Carter guilty. The third assignment of error is overruled.

### *Motion for an Acquittal*

{¶35} In his fourth assignment of error, Carter argues that the trial court erred in failing to grant his Crim.R. 29 motion for an acquittal. When reviewing the trial court's denial of a motion for an acquittal, we employ the same standard of review used to review the sufficiency of the evidence. *State v. Brumbach*, 1st Dist.

Hamilton No. C-100792, 2011-Ohio-6635, ¶ 14. Carter contends that the trial court erred in denying his motion for an acquittal because the jury had returned inconsistent verdicts. He specifically argues that the jury's verdict finding him guilty of one count of robbery was inconsistent with the jury being unable to reach a verdict on the remaining charges. Carter's argument is without merit.

{¶36} This court has held that "[t]he several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Gonzalez*, 154 Ohio App.3d 9, 2003-Ohio-4421, 796 N.E.2d 12, ¶ 106 (1st Dist.), quoting *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997), paragraph one of the syllabus. The jury found Carter guilty of robbery, and that finding was not inconsistent with the jury's failure to reach a verdict on the remaining charges. Once a verdict is reached, a reviewing court should accord deference to the jury's decision and not speculate about how that decision was reached. *Id.*

{¶37} We hold that the trial court did not err in denying Carter's motion for an acquittal. The fourth assignment of error is overruled.

### *Sentencing*

{¶38} In his fifth assignment of error, Carter argues that the trial court erred by imposing an improper sentence.

{¶39} Under R.C. 2953.08(G)(2), we may only vacate or modify a defendant's sentence if we clearly and convincingly find that the record does not support any mandatory sentencing findings or that the sentence imposed is

otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1; *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶40} Carter first argues that the trial court failed to consider the principles and purposes of sentencing under R.C. 2929.11 and 2929.12. The trial court is not required to make specific findings on the record with respect to these statutes, and, unless the defendant affirmatively demonstrates otherwise, we may presume that the trial court considered them. *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 33. Here, the trial court stated on the record the various factors that it had considered before deciding to impose a sentence of incarceration.

{¶41} Carter further argues that the trial court failed to notify him, pursuant to R.C. 2901.07(B), of the requirement that he submit a DNA specimen and of the consequences for failing to do so. This court has consistently held that the purpose of R.C. 2901.07(B) is to facilitate the DNA testing of felony offenders, and that the statute does not confer any substantive rights on a defendant. *State v. Taylor*, 1st Dist. Hamilton No. C-150488, 2016-Ohio-4548, ¶ 6. The trial court's failure to notify Carter that he must submit to DNA testing was harmless error and did not prejudice him. Accordingly, we hold that the trial court did not impose an improper sentence, and we overrule the fifth assignment of error.

{¶42} But we have found a clerical error in the trial court's judgment entry that requires correction. While the entry only imposes a sentence of incarceration for count two of robbery, it incorrectly states that Carter had been found guilty, after a trial by jury, of all eight counts. We affirm the trial court's judgment on count two, but remand with instructions for the trial court to correct the judgment entry to

reflect that Carter had been found guilty only of robbery in count two, and that the jury had been unable to reach a verdict on the remaining charges.

Judgment accordingly.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.