[Cite as *State v. Smith*, 2017-Ohio-8558.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-160836 |
| | | C-160837 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1506673 |
| | | B-1406013B |
| vs. | : | |
| | | *O P I N I O N.* |
| MAURICE SMITH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed in C-160837; Affirmed in Part, Sentence Vacated in Part, and Cause Remanded in C-160836

Date of Judgment Entry on Appeal:  November 15, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Defendant-Appellant.

ZAYAS, **Presiding Judge.**

{¶1}    Maurice Smith appeals his convictions and sentences for one count of burglary, a felony of the second degree, one count of trafficking in cocaine, a felony of the first degree, one count of possession of cocaine, a felony of the first degree, one count of possession of marijuana, a felony of the fifth degree, and tampering with evidence, a felony of the third degree.  He also appeals his sentence imposed on a community-control violation. Because we determine that the trial court erred in sentencing Smith, we sustain his tenth assignment of error and remand the matter for resentencing. We find no merit in his remaining assignments of error, so we affirm the remainder of the trial court's judgment.

### The 911 Call

{¶2}    On November 29, 2015, a man called 911 to report a burglary in progress.  The caller identified himself by name and stated that he lived upstairs from the apartment being burglarized.  He stayed on the phone with dispatch until the police arrived, and he continuously updated dispatch as to what he observed and heard.

{¶3}    The caller was silently watching the burglary from the hallway upstairs.  He told the 911 operator that he had heard the perpetrator break open the door to the apartment and enter.  He reported that the perpetrator was running back and forth between the apartment and the laundry room. He then heard the perpetrator slowly creeping up the stairs.

{¶4}    He saw the perpetrator who had broken into the apartment and told dispatch that he knew him, and that he had previously broken into the same apartment.  The caller heard banging and reported that the perpetrator was fighting with the officers.  The 911 operator urged him to calm down and to stay in his apartment.  The caller reported that the perpetrator was a crack

head and a thief, who had stolen his identification card. He also reported that an upstairs neighbor sold and delivered drugs that he kept in his car. Before hanging up the phone, he told the operator that he would be willing to file a police report and go to court.

### The Arrest

{¶5} Sergeant Robert Godbey and Officer Travis Moyers arrived on the scene three minutes after the call was made. They were aware of the burglary in progress. As Godbey approached the door to the apartment building, Smith opened the door from the inside. Godbey testified that he immediately recognized Smith and saw a large bag of marijuana sticking out of his hoodie pocket. After addressing Smith by name, he reached for Smith's arm, and Smith pulled away. Both officers then struggled with Smith. While they were struggling, the bag of marijuana fell to the floor.

{¶6} The struggle moved into a first-floor apartment, and Smith began to empty his pockets and throw cocaine and handfuls of marijuana in the apartment. After struggling for a few minutes, the officers were able to handcuff and arrest Smith. They searched him and recovered property that was later identified by the victim, Brandon Mattress, as items belonging to him.

### Preliminary Court Proceedings

{¶7} Smith was indicted for burglary, trafficking in cocaine, possession of cocaine, possession of marijuana, and tampering with evidence. Smith's counsel filed a motion to suppress arguing that the officers did not have reasonable suspicion to stop Smith as he was leaving the apartment building. The motion was overruled, and the trial was scheduled for two weeks later.

{¶8} In the meantime, Smith filed a pro se motion to dismiss, or in the alternative, a motion for a mistrial. Smith's counsel filed a motion to withdraw on the basis that his relationship with Smith was "irretrievably broken." The court scheduled a hearing on the motion to withdraw, and Smith informed the court he did not want new counsel and wanted his current counsel to continue to represent him. Counsel withdrew his motion and the pending pro se motions. Eleven days later, the trial court put on an entry allowing Smith's counsel to withdraw and appointing new counsel to represent Smith.

{¶9} Smith filed additional pro se motions including a motion for an independent laboratory analysis, requesting that a fingerprint analysis be performed on the plastic bags that contained the drugs, and a motion to dismiss, alleging numerous flaws in the proceeding, including a speedy-trial violation.

{¶10} His new counsel requested two continuances and another suppression hearing based on new evidence. The court granted counsel's requests, and the case was set for a second motion-to-suppress hearing. At the second motion-to-suppress hearing, counsel informed the court that Smith had drafted a motion to remove him as counsel but had not yet filed it. No reasons were given in support of the motion, and the trial court overruled it. The court asked counsel if he wanted to adopt and argue Smith's pro se motion to dismiss. Counsel declined, and the court overruled the motion. The second motion to suppress was denied.

{¶11} Smith's trial was scheduled the same day, and a visiting judge presided over the trial. Prior to trial, Smith asked the visiting judge to rule on the pro se motions he had filed. When counsel again explained that Smith had drafted a motion to appoint new counsel, Smith clarified that he only

wanted to address the speedy-trial issue and the motion for fingerprint analysis. His counsel told the court the request for fingerprint analysis was without merit, and that he could not argue the motion. The court asked the prosecutor and Smith's counsel to review the docket to determine whether there was a speedy-trial issue.

{¶12} The following day, the prosecutor and Smith's counsel assured the court that time had not expired. They explained that time was tolled by all of the continuances, except one, which were requested by Smith, by the appointment of new counsel and by the motions to suppress. The case proceeded to trial.

### The Jury Trial

{¶13} The state presented five witnesses. Michael Mattress testified that he lived in the apartment that was burglarized with his brother Brandon. Brandon Mattress testified that he sold convenience items, such as soft drinks, alcohol, chips, and cigarettes, from the apartment and from a small school bus that he converted into a store. He only accepted cash and kept it in a cashbox.

{¶14} On the night of the burglary, Brandon was driving a friend to her job downtown, when he received a call from an upstairs neighbor, Donald Hodge. Hodge informed him that someone had broken into his apartment. While Brandon was driving home, Hodge continued to call him and update him on the burglary. Brandon picked up his brother Michael, and they met the police in the apartment. Brandon testified that the carton of cigarettes, bottles of alcohol, and the three rubber-banded, labeled stacks of money recovered from Smith belonged to him.

{¶15} Wendy Pugh testified that she lived with her aunt in the same building in a ground-floor apartment. As she was going outside to find her

aunt, she saw Smith coming down the stairs. Smith had been friends with her oldest son. She spoke briefly with Smith, and saw the officers enter the building then struggle with Smith. She went back into her apartment at the request of the officers. Suddenly, the front door burst open, and the struggle moved into her living room. She testified that she saw Smith throw the bag of marijuana, a carton of cigarettes, and the cocaine.

{¶16} Officer Moyers testified that based on his experience and training, the cocaine was in bulk packaging, which was commonly used by drug dealers. He also discussed the struggle with Smith and confirmed that Smith was throwing the drugs when they were struggling in the apartment.

{¶17} Sergeant Godbey also testified. In describing the struggle, Godbey explained that Smith "was attempting to pull things out of his pocket and tampering with our evidence * * *." Godbey also testified that he had 23 years of police experience and had investigated thousands of crack-cocaine cases. Based on his experience and training, the large amount of cocaine indicated that it was for distribution because a personal-use amount would be about the size of a pea.

{¶18} While Godbey testified, the state played the 911 call for the jury and provided transcripts for the jury to follow along. Smith stipulated to the admissibility of the 911 call and requested that the transcript of the call be admitted into evidence. After Godbey testified, the state rested.

{¶19} Smith called his sole witness, Donald Hodge. Hodge testified that he lived in the upstairs apartment. On the night of the burglary, Smith had come to his apartment looking for his uncle. Hodge invited him in for a few moments. Shortly after Smith left, Hodge heard the commotion downstairs. Hodge did not see a bag of marijuana in Smith's pocket. But

Hodge did see a bag of marijuana on the floor by the entrance to the apartment building after the situation became calm.

{¶20} On cross-examination, Hodge denied calling Brandon Mattress and telling him about the burglary. Hodge stated that he called Brandon to tell him that the police were in his apartment.

{¶21} The state recalled Brandon as a rebuttal witness. Over objection, Brandon testified that Hodge called him three times on the night of the burglary. The first time, Hodge told him that Smith had broken into his apartment. Hodge next called him to tell him the police had arrived. Hodge then called to report that Smith was fighting with the officers and marijuana was all over the floor.

{¶22} The jury returned a verdict finding Smith guilty of all charges. The court sentenced Smith to one year on the community-control violation in the case numbered B-1406013. The court sentenced Smith to seven years on count 1, burglary, nine years on count 2, trafficking in cocaine, nine years on count 3, possession of cocaine, 11 months on count 4, possession of marijuana, and 30 months on count 5, tampering with evidence. The court ordered counts 2, 3, 4, and 5 to be served concurrently with each other and consecutively to count 1, and for the aggregate sentence to be served consecutively to the sentence in the case numbered B-1406013.

### The Overruling of the Motion to Suppress

{¶23} In his first assignment of error, Smith contends that the trial court erred in overruling his motion to suppress. He argues that his immediate detention was done without reasonable suspicion or probable cause.

{¶24} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as

true if competent, credible evidence supports them. Next, we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-5372, ¶ 16.

{¶25} A police officer may rely on a police broadcast for probable cause to make an arrest when the information is sufficient to cause a reasonable belief that a crime has been committed by the accused. *See State v. Fultz*, 13 Ohio St.2d 79, 82, 234 N.E.2d 593 (1968). Moreover, if the officer has probable cause to believe that an individual has committed a criminal offense in his presence, he may, without violating the Fourth Amendment, stop and arrest the offender. *See Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). An officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The search-incident-to-arrest exception protects arresting officers and safeguards evidence that the arrestee might conceal or destroy. *Arizona v. Gant,* 556 U.S. 332, 339, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

{¶26} In this case, Sergeant Godbey was investigating a burglary in progress. As he approached the front door, Godbey saw Smith attempting to leave the building. Godbey testified that he immediately saw a large bag of marijuana sticking out of Smith's pocket. After personally witnessing a criminal offense, Godbey had probable cause to arrest Smith. Once Smith was arrested, the officers were allowed to conduct a search incident to that lawful arrest. Accordingly, we overrule Smith's first assignment of error.

8

### The Denial of the Motion to Appoint New Counsel

{¶27} In his second assignment of error, Smith argues that the trial court erred by denying his request for new counsel. The decision whether to appoint new counsel is within the sound discretion of the trial court. *See State v. Summerlin*, 1st Dist. Hamilton No. C-160539, 2017-Ohio-7625, ¶ 9. An indigent defendant must demonstrate good cause to warrant a substitution of counsel. *See State v. Bullock*, 12th Dist. Clermont No. CA2005-04-031, 2006-Ohio-598, ¶ 13.

{¶28} Here, Smith had drafted, but had never filed, a motion for new counsel. When his appointed attorney brought the issue to the court's attention, Smith did not state any reasons to support the motion, and the trial court denied the motion. Later that day, counsel again raised the issue to the visiting judge. When provided the opportunity, Smith chose not to address the motion or put forth any grounds for the request. Instead, he informed the court that he wanted to address the motion for a fingerprint analysis and the speedy-trial issue. Accordingly, there was no further discussion regarding the appointment of new counsel.

{¶29} Because Smith failed to articulate a basis for the motion when given two opportunities to do so, it cannot be said that Smith demonstrated good cause to support the motion. Therefore, we find no abuse of discretion, and overrule the second assignment of error.

### The Rulings on the Pro Se Motions

{¶30} Smith asserts that the trial court erred by failing to rule on his pro se motions. Specifically, he claims the trial court never ruled on his motion for an independent laboratory analysis to determine whether the cocaine was accurately weighed and his motion to dismiss based upon a speedy-trial violation. Initially, we observe that Smith filed

9

his motions pro se, even though at all times throughout the proceedings below he was represented by court-appointed counsel.

{¶31}   In Ohio, trial courts need not address pro se motions when the defendant is represented by counsel. *See State v. Smith,* 4th Dist. Highland No. 09CA29, 2010-Ohio-4507, ¶ 100; *State v. Davis*, 10th Dist. Franklin No. 05AP-5039, 2006-Ohio-193, ¶ 12; *State v. Greenleaf*, 11th Dist. Portage No. 2005-P-0017, 2006-Ohio-4317, ¶ 70.   Although a defendant has the right to counsel or the right to act pro se, a defendant does not have any right to "hybrid representation." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, paragraph one of the syllabus; *State v. Thompson,* 33 Ohio St.3d 1, 6-7, 514 N.E.2d 407 (1987).

{¶32} When a criminal defendant is represented by counsel and counsel does not join in the defendant's pro se motion or otherwise indicate a need for the relief sought by the defendant pro se, the trial court cannot properly consider the defendant's pro se motion. *See State v. Davis,* 10th Dist. Franklin No. 05AP-193, 2006-Ohio-5039, ¶ 12; *State v. Pizzaro,* 8th Dist. Cuyahoga No. 94849, 2011-Ohio-611, ¶ 7 (holding that "[o]ne who is represented by counsel and who does not move the court to proceed pro se, may not 'act as co-counsel on his own behalf.' "), quoting *Greenleaf* at ¶ 70.

{¶33} We note that Smith requested that a fingerprint analysis be conducted on the plastic baggies that contained the marijuana and cocaine, and not a reweighing of the cocaine.   When Smith addressed the court regarding this motion, his trial counsel explained to the court why the motion was without merit, and that counsel would not adopt or argue the motion. Because counsel did not join in the pro se motion, the court did not err in disregarding the motion.

10

{¶34} Smith also addressed the court regarding the pro se motion to dismiss based on a speedy-trial violation. The court addressed defense counsel and the prosecutor and requested that they review the case to determine if there were a speedy-trial violation. After reviewing the docket, Smith's counsel assured the court that Smith's speedy-trial rights had not been violated. Once Smith's counsel determined the motion was meritless, the trial court did not err by failing to address Smith's pro se motion. We overrule this assignment of error.

### Admission of Hearsay Evidence

{¶35} Smith argues in his fourth assignment of error that the trial court erred by permitting the state to introduce hearsay statements. Smith specifically challenges the 911 call and the rebuttal testimony of Brandon Mattress regarding statements made by Hodge.

{¶36} Smith argues the 911 call was inadmissible hearsay that violated Smith's confrontation rights. However, Smith stipulated to the admissibility of the 911 call and requested that the transcript of the 911 call be admitted as evidence. By stipulating to the admissibility of the 911 call, Smith waived any error and is precluded from challenging its admissibility on appeal. *See In re J.B.*, 10th Dist. Franklin No. 11AP-63, 2011-Ohio-3658, ¶ 9.

{¶37} Moreover, "911 calls are usually admissible under the excited utterance or the present sense impression exception to the hearsay rule." *State v. Crowley*, 2d Dist. Clark No. 2009 CA 65, 2009-Ohio-6689. Because 911 calls seeking police assistance are not testimonial in nature, the Confrontation Clause does not apply. *See State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 16.

{¶38} As to the rebuttal testimony, Smith argues that Brandon's testimony about his telephone conversations with Hodge on the night of the

11

burglary was inadmissible hearsay and an inadmissible prior inconsistent statement.

{¶39} Evid.R. 613 governs impeachment by self-contradiction, and section (B) of the rule provides that

(B) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require; (2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

{¶40} Accordingly, Evid.R. 613(B) permits the impeachment of an adverse witness with the witness's prior inconsistent statement when a proper foundation is laid. *See State v. Simpson*, 1st Dist. Hamilton No. C-100789, 2011-Ohio-4578, ¶ 19. If the witness denies making the statement, extrinsic evidence is permissible, provided that the evidence concerns a fact of consequence and not a collateral matter. *See State v. Pierce*, 2011-Ohio-4873, 968 N.E.2d 1019, ¶ 82 (2d Dist.).

{¶41} In this case, Hodge, who testified for Smith, testified that he had called Brandon on the night of the burglary to tell him the police were in his apartment. Hodge denied telling Brandon that Smith had broken into his apartment. Once Hodge denied making the statements, Brandon's testimony, which concerned a fact of consequence, was admissible.

{¶42} Therefore, the trial court did not abuse its discretion by allowing the rebuttal testimony. The fourth assignment of error is overruled.

### Other Acts Testimony

{¶43} Next Smith contends that the 911 call and Godbey's testimony that he knew Smith from other criminal dealings constituted inadmissible "other acts" testimony. *See* Evid.R. 404(B). However, as previously discussed, Smith waived any error with respect to the 911 call. Because Smith did not object to Godbey's testimony, he has forfeited all but plain error on appeal. *See* Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22-23. Smith does not explain how Godbey's testimony constituted impermissible "other acts" testimony, and has, therefore, failed to meet his burden to demonstrate plain error. We overrule the fifth assignment of error.

### Admission of Officers' Testimony

{¶44} In his sixth assignment of error, Smith alleges the trial court erred in permitting Officer Moyer and Sergeant Godbey to testify without being qualified as experts that the bulk amount of cocaine indicated that it was for sale. Police officers may offer lay opinion testimony under Evid.R. 701 if it is based on the officers' perceptions through experience. *State v. Martin,* 1st Dist. Hamilton No. C-150054, 2016-Ohio-802, ¶ 16. A trial court's decision to admit evidence is reviewed under an abuse-of-discretion standard. *Id.*

{¶45} Both officers testified based on their knowledge and perceptions through experience. Godbey testified that he had been an officer for 23 years, and

13

had conducted thousands of drug investigations. Based on his experience, the amount of cocaine recovered was a substantial amount with a street value of approximately $2,000. He further explained, without objection, that the amount indicated distribution because a personal-use amount would be the size of a pea and sell for $50. Moyer testified that based on his experience, the cocaine was in "bulk packaging" consistent with how sellers package it. On this record, we find no abuse of discretion.

{¶46} Smith also argues that Godbey testified as an expert when he testified that Smith was "tampering with evidence." Because Smith did not object to the testimony, we address it under a plain-error standard. Under the plain-error standard, we will not reverse a conviction unless, but for the error, the outcome clearly would have been different. *See State v. Reid*, 1st Dist. Hamilton No. C-050465, 2006-Ohio-6450, ¶ 16.

{¶47} Here, we find no plain error. Godbey was testifying about his observations during the struggle that Smith was throwing the drugs. Additonally, Godbey's testimony was merely cumulative to Moyer's and Pugh's testimony and cannot be said to have altered the outcome of the trial. The sixth assignment of error is overruled.

### *Prosecutorial Misconduct*

{¶48} In his seventh assignment of error, Smith contends the prosecutor committed misconduct by asking the officers about the quantity of cocaine and calling Brandon as a rebuttal witness. As previously discussed, the officers' testimony and the rebuttal testimony were properly admitted. Smith further claims the prosecutor's closing argument contained misstatements of fact and law in describing the burglary element of "likely to be present" and the trafficking element of "intended for sale or resale by the offender or another person," and the prosecutor

14

improperly vouched for Brandon. Smith concedes he failed to object to the remarks, so our review is limited to plain error.

{¶49} Prosecutors are entitled to a certain degree of latitude during closing argument. *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. *See State v. Carter*, 2017-Ohio-1328, ____ N.E.3d ____, ¶ 12 (1st Dist.). Prosecutorial misconduct rises to the level of plain error only if it is clear the defendant would not have been convicted in the absence of the improper comments. *Id.*

{¶50} Having reviewed the prosecutor's closing argument, we find the prosecutor's statements to be proper. Here, the prosecutor merely referred to evidence contained in the record and asked the jury to determine whether such evidence was credible. Moreover, the court informed the jury that closing arguments are not evidence, and the trial court properly instructed on the law to be applied.

{¶51} Even if the prosecutor's statements were improper, we find that the outcome of the proceeding would not have been different absent such statements. In light of the evidence presented at trial, Smith would have been convicted in the absence of the prosecutor's remarks.

{¶52} Having found that the prosecutor did not make any improper remarks, we overrule Smith's seventh assignment of error.

### Ineffective Assistance of Counsel

{¶53} In his eighth assignment of error, Smith argues that he received ineffective assistance of counsel. Most of his claims concern the failure to object to evidence that we have already concluded was admissible and the failure to object to the prosecutor's statements that we have already concluded were proper. Therefore, we do not find that those failures amounted to ineffective assistance of counsel.

{¶54} His remaining arguments concern counsel's failure to adopt Smith's pro se motions and the failure to conduct enough voir dire.

{¶55} To prevail on an ineffective-assistance-of-counsel claim, Smith must show trial counsel's performance fell below an objective standard of reasonableness and he was prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668, 687-688, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to demonstrate prejudice, Smith must establish that, but for counsel's errors, there is a reasonable probability that the result of trial would have been different. *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, 776 N.E.2d 79, ¶ 6. The failure to make an adequate showing on either prong is fatal to an ineffective-assistance-of-counsel claim. *See Strickland* at 697.

{¶56} Because of the difficulties inherent in making the evaluation of counsel's effectiveness after the fact, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Therefore, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* at 689-690.

{¶57} Counsel determined that the pro se motions had no merit and, based on the record, that determination was sound trial strategy. The record demonstrates that most of the questions counsel was prepared to ask in voir dire had already been asked by the prosecutor, the questions counsel did ask were relevant, and counsel made effective use of his peremptory challenges. Moreover, counsel's conduct during voir dire is presumed to be a matter of trial strategy. *See State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 206.

{¶58} Based on this record, Smith failed to demonstrate that counsel was deficient. We also note that Smith has failed to explain how counsel's decisions were

deficient or resulted in any prejudice. Therefore, we overrule his eighth assignment of error.

### Sufficiency and Manifest Weight

{¶59} In his ninth assignment of error, Smith claims his convictions for burglary, trafficking in cocaine, and tampering with evidence were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶60} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When considering a challenge to the weight of the evidence, the court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶61} First, Smith claims that state failed to prove that the occupants of the home were "likely to be present" to support the burglary conviction. Here, Brandon testified that that he lived in the apartment, he had been there earlier but left to take a friend to work, and it was very likely that he could have been home at the time of the burglary. The jury was entitled to believe Brandon's testimony, so Smith's conviction is not against the manifest weight of the evidence and was supported by sufficient evidence.

{¶62} Next, he argues the state failed to prove the cocaine was intended for sale or resale. Both officers testified that the amount of cocaine was inconsistent with personal use and indicated trafficking. Moyer testified that the cocaine was

bulk packaged, typical packaging for trafficking. Finally, Godbey testified that a personal use amount is the size of a pea and costs $50. The amount that Smith was transporting had a street value of a few thousand dollars. Both officers testified based on their experience. Viewing this evidence in a light most favorable to the state, we conclude that the state proved the cocaine was intended for sale or resale.

{¶63} Finally, Smith claims the evidence was insufficient to prove Smith intended to hinder an investigation because the bags containing drugs either fell out of his pocket or were torn during the struggle. Three witnesses, Pugh, Moyer, and Godbey, testified that Smith threw a bag of cocaine and a bag of marijuana that spilled all over the apartment. Godbey also testified that he saw Smith rip the bag of cocaine and throw it across the room. He also saw Smith rip the marijuana and disperse the marijuana around the apartment. Moyer and Smith testified that they attempted to collect all of the spilled drugs, and Godbey testified that they could not recover all of it. All of this testimony was more than sufficient evidence to support his tampering conviction.

{¶64} Therefore, we overrule Smith's ninth assignment of error.

### Sentencing

{¶65} In his final assignment of error, Smith contends the trial court erred in sentencing him for burglary, trafficking in cocaine, possession of cocaine, possession of marihuana, tampering with evidence, and on the community-control violation. First, he argues that the trial court erred by imposing multiple sentences for allied offenses. The state concedes the error. Accordingly, we vacate the sentences for possession of cocaine and trafficking in cocaine, and remand the cause so that the state may elect which offense to pursue for resentencing.

{¶66} Smith also claims the trial court erred in sentencing him because the record does not support the sentence. R.C. 2953.08(G)(2) governs appellate review of felony sentences. This court will only modify or vacate a sentence under R.C.

18

2953.08(G)(2) if it clearly and convincingly finds that either the record does not support the mandatory sentencing findings or the sentence is otherwise contrary to law. *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶67} Smith argues the court failed to make the requisite findings to impose consecutive sentences. However, the record shows that the trial court made the required findings, announced them at the sentencing hearing, and incorporated them into the sentencing entry. *See State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. Therefore, the trial court did not err in imposing consecutive sentences.

{¶68} Next, he argues the court failed to consider the principles and purposes of sentencing pursuant to R.C. 2929.11 and 2929.12. While a trial court is required to consider the purposes and principles of sentencing, it need not make specific findings. *See State v. Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, ¶ 51. We can presume from a silent record that the trial court considered the appropriate factors unless the defendant affirmatively shows that the court has failed to do so. *Id.* Smith does not make any showing that the court failed to consider the statutory factors, and the trial court expressly stated it had considered the statutory factors. Therefore, Smith failed to demonstrate that the sentences were clearly and convincing contrary to law.

{¶69} Smith contends the court failed to inform him of the requirement to submit to DNA testing and the penalties for any failure. However, this court has held that the statute does not confer any substantive rights on the defendant. *See State v. Taylor*, 1st Dist. Hamilton No. C-150488, 2016-Ohio-4548, ¶ 5-6. Therefore, the court's failure to notify Smith about DNA testing was harmless and did not prejudice him.

**{¶70}** Accordingly, we sustain that part of Smith's assignment of error challenging the multiple sentences for allied offenses and remand the cause for a new sentencing hearing, and overrule the remainder of the assignment of error.

## Conclusion

**{¶71}** We vacate Smith's sentence in part, and we remand the cause for a new sentencing hearing on the allied offenses of possession of cocaine and trafficking in cocaine so that the state may elect which offense to pursue for resentencing. The trial court's judgement is affirmed in all other respects.

Judgment affirmed in part, sentence vacated in part, and cause remanded.

**MYERS** and **MILLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.