[Cite as *State v. Adbuleh*, 2021-Ohio-4495.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

        Plaintiff-Appellee,                   :                   No. 20AP-473
                                                    (C.P.C. No. 18CR-6113)

v.                                                            :

                                                     (REGULAR CALENDAR)

Abdullahi M. Abduleh,                           :

        Defendant-Appellant.               :

D E C I S I O N

Rendered on December 21, 2021

**On brief**: *G. Gary Tyack*, Prosecuting Attorney, and *Taylor M. Mick*, for appellee. **Argued**: *Taylor M. Mick*.

**On brief**: *Yeura Venters*, Public Defender, and *George M. Schumann*, for appellant. **Argued**: *George M. Schumann*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Defendant-appellant, Abdullahi M. Abduleh, appeals from a judgment of the Franklin County Court of Common Pleas retaining jurisdiction over him and ordering his commitment to Twin Valley Behavioral Healthcare ("Twin Valley"). For the reasons which follow, we affirm.

{¶ 2} By indictment filed December 14, 2018, plaintiff-appellee, State of Ohio, charged appellant with one count of aggravated burglary, in violation of R.C. 2911.11, a felony of the first degree; one count of aggravated robbery, in violation of R.C. 2911.01, a felony of the first degree; one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree; and two counts of robbery, in violation of R.C. 2911.02, felonies of the

second and third degrees. The charges arose from an incident which occurred on November 21, 2018 involving appellant and his uncle.

{¶ 3} As the matter proceeded, the issue of appellant's competency to stand trial arose. On January 17, 2019, the court ordered a competency evaluation of appellant in accordance with R.C. 2945.371. Following a July 16, 2020 hearing, the court found appellant incompetent to stand trial. The court ordered appellant undergo treatment for a period of one year to restore his competency.

{¶ 4} On September 18, 2020, the court held a hearing to determine whether to retain jurisdiction over appellant pursuant to R.C. 2945.39(A)(2). Dwayne Timothy Coon, Ph.D., a psychologist who examined appellant, testified at the hearing. Dr. Coon explained that appellant suffered from a "severe mental illness," indicated by "significant difficulties with mood, thought, behavior, insight, judgment and deficits in cognitive functioning." (Sept. 18, 2020 Tr. at 14.) Dr. Coon concluded that appellant was not fully capable of understanding the nature and objectives of the proceedings against him or of assisting in his defense. Dr. Coon further concluded that appellant "continued to be an appropriate subject for involuntary treatment," as appellant's mental illness led "to behavior which create[d] a substantial risk of physical harm to others." (Sept. 18, 2020 Tr. at 15.)

{¶ 5} Appellant's uncle, Abdurahman A. Mohamed, also testified at the September 18, 2020 hearing. When the prosecutor asked Mohamed if he remembered what happened on November 21, 2018, Mohamed stated "[i]t's been a long time. I don't remember." (Sept. 18, 2020 Tr. at 29.) When the prosecutor asked Mohamed if he had a fight with appellant on November 21, 2018, Mohamed stated that he "remember[ed] having an argument with [appellant] that day, but [he did not] exactly specifically know what happened and how it happened because its been a while." (Sept. 18, 2020 Tr. at 30.) Mohamed reiterated several times that he did not recall the events from November 21, 2018. Mohamed did, however, admit that he had an argument with appellant on November 21, 2018, and that Mohamed had "called the police that day and [he] remember[ed] police taking [him] to the hospital." Mohamed identified State's Exhibits 3 and 4 as pictures of himself. The pictures depict Mohamed with various bruises, cuts, and a missing tooth. Mohamed testified that the "injuries" depicted in State's Exhibits 3 and 4

"wasn't there before the date of the argument" with appellant. Mohamed affirmed he lost a tooth during the argument with appellant. (Sept. 18, 2020 Tr. at 36.)

{¶ 6} Mohamed further affirmed that, immediately prior to the September 18, 2020 hearing, he watched a videotaped recording of an interview he had with police a few days after the November 21, 2018 incident. Mohamed stated that "the video was me - - the picture of the video was me, the audio was mine, but I don't remember how it happened and what happened because its been passed for a long time." (Sept. 18, 2020 Tr. at 31.) Mohamed indicated that his memory of the incident was not refreshed after watching the video.

{¶ 7} The state then moved to play the video of Mohamed's police interview, and defense counsel objected. The trial court overruled the objection, concluding the video satisfied the Evid.R. 803(5) exception to hearsay. The court noted that Mohamed had "identif[ied] himself as the person that was in [the video]. He did identify his voice," and that Mohamed still did not "remember what happened." (Sept. 18, 2020 Tr. at 32.) The state played the video during the hearing, but the court did not admit the video into evidence.[1] Mohamed's statements in the recorded police interview support the offenses charged in the indictment. (State's Ex. 2.)

{¶ 8} At the conclusion of the September 18, 2020 hearing, the court stated that Mohamed's recorded police interview, which was "made at or near the time of the offense, as well as * * * the pictures in Exhibits 3 and 4," constituted clear and convincing evidence that appellant had committed the offenses charged in the indictment. (Sept. 18, 2020 Tr. at 45.) The court further found clear and convincing evidence that appellant was a mentally ill person subject to court-ordered institutionalization.

{¶ 9} On September 25, 2020, the trial court issued an entry reflecting its findings from the September 18, 2020 hearing. The court retained jurisdiction over appellant and ordered appellant committed to Twin Valley pursuant to R.C. 2945.39(D)(1).

{¶ 10} Appellant appeals, assigning the following single assignment of error for our review:

> The trial court erred in admitting the prior recorded statement of the state's witness as a recorded recollection exception (Evid.R. 803(5)) to the rule against hearsay (Evid.R. 802), and

---

[1] The court preserved a copy of the video for the record.

the trial court's reliance on the erroneously admitted evidence violated the defendant-appellant's due process rights under the Fourteenth Amendment to the United States Constitution and Art. I, Section 16 of the Ohio Constitution, as the trial court's judgment to retain jurisdiction over the defendant-appellant under R.C. 2945.39(A)(2) was not supported by clear and convincing evidence.

{¶ 11} Appellant's sole assignment of error asserts the trial court erred by admitting the video of Mohamed's police interview at the September 18, 2020 hearing. Appellant contends that the trial court's reliance on the video to retain jurisdiction over him affected his substantial rights.

{¶ 12} When certain statutory criteria are satisfied, R.C. 2945.39 authorizes a trial court to retain jurisdiction over an incompetent defendant and commit the defendant to the care of a treatment facility. *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, ¶ 1; *State v. Weaver*, 9th Dist. No. 17CA0092-M, 2018-Ohio-2998, ¶ 9. As the state charged appellant with first and second-degree felony offenses of violence, the court found appellant incompetent to stand trial, and the maximum time permitted under R.C. 2945.38(C) for treatment to restore competency had expired, R.C. 2945.39 applied to appellant. R.C. 2945.39(A); *Williams* at ¶ 1.

{¶ 13} R.C. 2945.39 provides, in relevant part, as follows:

(A) * * * (2) On the motion of the prosecutor or on its own motion, the court may retain jurisdiction over the defendant if, at a hearing, the court finds both of the following by clear and convincing evidence:

(a) The defendant committed the offense with which the defendant is charged.

(b) The defendant is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order.

(B) In making its determination under division (A)(2) of this section as to whether to retain jurisdiction over the defendant, the court may consider all relevant evidence * * *.

{¶ 14} The trial court found the R.C. 2945.39(A)(2)(a) and (b) factors established by clear and convincing evidence. Appellant asserts the court's finding under R.C.

2945.39(A)(2)(a) was not supported by clear and convincing evidence, as the video of Mohamed's police interview was inadmissible hearsay. Appellant contends that, absent the recorded interview, the remaining evidence from the hearing failed to demonstrate that appellant committed the offenses charged in the indictment. *See State v. Coffman*, 9th Dist. No. 29720, 2020-Ohio-6855, ¶ 14 (finding the trial court erred by retaining jurisdiction over the defendant pursuant to R.C. 2945.39, as there was "no evidence presented at the [R.C. 2945.39(A)(2)] hearing" to demonstrate that the defendant "committed the charged offense"); *State v. Wright*, 8th Dist. No. 108343, 2020-Ohio-1271, ¶ 20. Appellant does not take issue with the court's finding under R.C. 2945.39(A)(2)(b).

{¶ 15} Clear and convincing evidence is evidence that will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Clear and convincing evidence "is more than a mere preponderance of the evidence, but does not require proof beyond a reasonable doubt." *State v. Middleton*, 10th Dist. No. 20AP-196, 2021-Ohio-3498, ¶ 31.

{¶ 16} For the reasons stated below, we find that, even assuming the rules of evidence applied at the September 18, 2020 hearing, the trial court properly admitted the video as a recorded recollection under Evid.R. 803(5). *See State v. Bateman*, 10th Dist. No. 10AP-763, 2011-Ohio-3028, ¶ 9 (concluding that, even if the rules of evidence applied at the R.C. 2945.39(A)(2) commitment hearing, the statement at issue was admissible); *Weaver* at ¶ 13. In general, the admission or exclusion of evidence is governed by the rules of evidence. *See, e.g., State v. McGovern*, 6th Dist. No. E-08-066, 2010-Ohio-1361, ¶ 33. In this respect, a reviewing court must simply determine whether the trial court's ruling on an evidentiary issue was correct or not based upon application of the rule and, in this sense, presents a question of law. *See State v. Depew,* 136 Ohio App.3d 129, 132 (4th Dist.1999) ("when a party challenges the trial court's construction of an evidentiary rule, he presents a question of law that we review *de novo*"). Thus, although this court sometimes speaks in terms of a trial court's discretion in addressing the interpretation of a rule, it is not discretionary in most instances. Stated otherwise, in interpreting the rules of evidence, "no court has the authority, within its discretion, to commit an error of law." *State v. Chandler,* 10th Dist. No. 13AP-452, 2013-Ohio-4671, ¶ 8.

{¶ 17} "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Mohamed's previously recorded police interview, offered to prove the truth of what occurred on November 21, 2018, constituted hearsay. Evid.R. 802 prohibits the admission of hearsay except as otherwise provided by, inter alia, the rules of evidence. *See State v. Young*, 5 Ohio St.3d 221, 223 (1983) (stating that "[h]earsay is inadmissible because it is unreliable").

{¶ 18} Evid.R. 803 provides as follows:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> (5) Recorded recollection.
> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

{¶ 19} Thus, in order to read a statement into evidence, pursuant to Evid.R. 803(5), the proponent of the evidence must establish that: (1) the witness has a lack of present recollection of the recorded matter, (2) the recorded recollection was made at a time when the matter was fresh in the witness's memory, (3) the recorded recollection was made or adopted by the witness, and (4) the recorded recollection correctly reflects the prior knowledge of the witness. *State v. Green*, 10th Dist. No. 98AP-633 (Mar. 18, 1999), citing *Dayton v. Combs*, 94 Ohio App.3d 291, 300 (2d Dist.1993). Appellant presents no argument regarding the first three requirements for admission under Evid.R. 803(5). As Mohamed testified that he could not remember what happened during the argument with appellant on November 21, 2018, Mohamed's recorded police interview occurred just a few days after the November 21, 2018 incident, and Mohamed affirmed that he was the individual speaking on the video, we find the first three requirements for admission satisfied in the present case.

{¶ 20} Appellant contends that the fourth requirement for admission under Evid.R. 803(5) was not satisfied, as Mohamed did not testify that his recorded interview reflected his prior knowledge correctly. Appellant notes that Mohamed was "never asked if his recorded statements were accurate, [and] the state did not even ask Mr. Mohamed if he told the truth when he made the statements." (Appellant's Brief at 27.)

{¶ 21} Evid.R. 803(5) "makes explicit the requirement that the foundation for the introduction of the statement under this exception must be made by testimony of the witness himself." Staff Notes Evid.R. 803(5). Thus, to admit a statement as a recorded recollection, the "proponent of the statement must produce affirmative proof through the testimony of the witness, that the statement correctly reflects the witness's prior knowledge." *State v. Proffitt*, 12th Dist. No. CA2016-07-134, 2017-Ohio-1236, ¶ 23. *Accord State v. Ross*, 6th Dist. No. H-11-022, 2013-Ohio-1595, ¶ 17. *See Combs* at 301 (finding a declarant's trial testimony provided "sufficient indicia of the statement's trustworthiness to meet the fourth requirement for admission pursuant to Evid.R. 803(5)," where the declarant testified that his prior statement "could be right" and that the declarant had answered the questions in his prior statement "to the best of his ability").

{¶ 22} Thus, if there is no testimony from the declarant regarding the accuracy of their prior statement, the recorded recollection is inadmissible. *State v. Perry*, 147 Ohio App.3d 164, 171 (6th Dist.2002) (finding evidence inadmissible under Evid.R. 803(5), as "the child did not testify that the video tape correctly reflected the knowledge she had of the events in question at the time the video tape was made"); *Green*. If the declarant testifies that their recorded statement does not accurately reflect their prior knowledge, the fourth requirement for admission under Evid.R. 803(5) will not be satisfied. *Proffitt* at ¶ 4, 6, 26 (holding that, even though the witness's recorded statement was in her handwriting and contained her signature, because the witness testified at trial that she was " 'not sure' " if her prior written statement was true and "twice testified that she did not believe the [prior] statement reflected what happened," the witness's trial testimony failed to demonstrate that her prior written statement "accurately reflected her prior knowledge of the incidents"). If the declarant indicates through their testimony that their prior recorded statement was coerced, such testimony fails to establish the accuracy of the prior statement for purposes of Evid.R. 803(5). *Combs* at 301 (concluding that, as the declarant testified

"not only he could not remember signing the statements, but also that he would have signed anything to get out of the [gambling] Club" on the night of the police raid, such testimony failed to "establish the accuracy of his statements").

{¶ 23} However, where the declarant provides affirmative testimony acknowledging they made the prior statement, and provides no indication that the prior statement was inaccurate or untruthful, courts have found the fourth requirement under Evid.R. 803(5) satisfied. *See United States v. Riley*, 657 F.2d 1377, 1386 (8th Cir.1981) (finding the recorded recollection admissible pursuant to Fed.R.Evid. 803(5), as the witness "stated that she remembered talking to the law enforcement officers, taping the interview, talking with the FBI agent," and the witness "did not repudiate either statement"); *United States v. Williams*, 571 F.2d 344, 350 (6th Cir.1978) (finding the witness's prior recorded statement admissible pursuant to Fed.Evid.R 803(5), as it "contained the indicia of trustworthiness required by Rule 803(5) and was never categorically disowned or contradicted by the witness").

{¶ 24} In *State v. Wolfe*, 4th Dist. No. 95CA04 (June 17, 1996), the court admitted a statement, pursuant to Evid.R. 803(5), which the declarant gave to police shortly after the shooting at issue in the case. Although the defendant argued the declarant failed to establish the accuracy of her prior statement, the reviewing court concluded that the declarant's testimony established her prior statement "correctly reflected her recollection at the time it was given." *Id.* The court noted the declarant had "expressly testified that the statement she read below was the one she gave to an 'Officer Bowen' on October 5, 1994," thereby establishing "that she remember[ed] making the statement." *Id.* The court further found "no indication from the witness that the statement was inaccurate," and noted to the contrary the declarant's testimony that "she was 'not denying that [the defendant] said [what was in the statement]' " and that "she was 'not denying that that was said in the statement.' " *Id.*

{¶ 25} Regarding the requirement that the recording correctly reflect the declarant's prior knowledge, we note the following exchange between the prosecutor and Mohamed at the September 18, 2020 hearing:

> Q. Okay. This morning did you watch a video recording of yourself talking to the police?

A.  Yes, I saw the video.

Q.  And you told the police about what happened during that argument you had with your nephew on November 21, correct?

A.  Yeah * * *.

(Sept. 18, 2020 Tr. at 31.)

{¶ 26} Thus, Mohamed affirmed through his testimony that he told police what happened during the November 21, 2018 incident with appellant in the recorded police interview.   Mohamed never indicated that the statements he made to police were inaccurate, untruthful, or coerced. Mohamed also never contradicted his statements from the recorded police interview, he simply stated at the September 18, 2020 hearing that he could not recall what occurred during the incident with appellant. However, Mohamed admitted at the hearing that he had an argument with appellant, called police, and had police take him to the hospital on November 21, 2018.  Mohamed corroborated some of his statements from the recorded interview, as he affirmed at the September 18, 2020 hearing that he lost a tooth during the argument with appellant, and stated in the recorded interview that he lost a tooth during the fight he had with appellant on November 21, 2018.

{¶ 27} Accordingly, on the facts presented in the present case, the trial court could reasonably conclude that the recorded police interview reflected Mohamed's prior knowledge of the incident correctly. Mohamed affirmed through his testimony that in the recorded interview he told police what happened during the November 21, 2018 incident with appellant, and Mohamed provided no indication that he had fabricated his statements to police.  The remainder of Mohamed's testimony at the hearing bolstered the reliability of his prior recorded statement.  Accordingly, we find Mohamed's testimony satisfied the fourth requirement for admission under Evid.R. 803(5).

{¶ 28} Furthermore, evidence presented at the September 18, 2020 hearing demonstrated that Mohamed had executed a drop charges statement on May 10, 2019.  The drop charges statement indicated that Mohamed did not wish to pursue further prosecution against appellant.  Mohamed explained at the September 18, 2020 hearing that he executed the drop charges statement because he "forg[a]ve [appellant] - - totally forg[a]ve him," not because the underlying events had not occurred. (Sept. 18, 2020 Tr. at 38.) After Mohamed's testimony, the court concluded that "whether Mr. Mohamed wanted to simply

drop the charges or didn't remember the incident, the State has shown that the offense did occur by clear and convincing evidence." (Sept. 18, 2020 Tr. at 45.)

{¶ 29} Thus, even if the rules of evidence applied at the R.C. 2945.39(A)(2) hearing, the trial court did not err by admitting Mohamed's recorded police interview pursuant to Evid.R. 803(5). Mohamed's statements in the recorded interview, as well as the testimony and remaining exhibits admitted at the September 18, 2020 hearing, provided the trial court with clear and convincing evidence that appellant had committed the offenses charged in the indictment. As clear and convincing evidence supported the trial court's findings under R.C. 2945.39(A)(2)(a) and (b), the trial court properly retained jurisdiction over appellant pursuant to R.C. 2945.39(A)(2).

{¶ 30} Appellant's sole assignment of error is overruled. Having overruled appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER and MENTEL, JJ., concur.

_____