[Cite as *Cleveland v. Myles*, 2022-Ohio-4504.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 111309 |
| v. | : | |
| ROGER MYLES, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 15, 2022

Criminal Appeal from the Cleveland Municipal Court
Case No. 2021 CRB 011070

### *Appearances:*

Mark Griffin, Cleveland Director of Law, Aqueelah A. Jordan, Chief City Prosecutor, and Retanio A. Rucker, Assistant Prosecuting Attorney, *for appellee.*

Flannery | Georgalis LLC and W. Benjamin Reese, *for appellant*.

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Roger Myles ("Myles") appeals from a judgment of the Cleveland Municipal Court that convicted him of domestic violence after a bench trial. On appeal, he challenges the admission of the victim's 911 call and the

written statement she provided to the responding police officers. He also contends that his conviction was against the manifest weight of the evidence. Our review indicates the 911 call was admissible under Evid.R. 803(1) as a present sense impression exception to the hearsay rule and the trial court properly permitted the victim to read her written statement to the police into the record pursuant to Evid.R. 803(5). We also find meritless Myles's claim that his conviction was against the manifest weight of the evidence. Accordingly, we affirm the judgment of the trial court.

**Background**

{¶ 2} Myles and the victim had been in a 14-year relationship when the subject domestic violence incident occurred on October 9, 2021. On that day, the victim called 911 for assistance and provided a written statement to the police officers who arrived at her residence in response to her call. The next day, October 10, 2021, the victim called 911 again to report another incident of domestic violence and also provided a written statement regarding the incident.

{¶ 3} Subsequently, Myles was charged in two separate complaints. He was charged with domestic violence in violation of R.C. 2919.25, a first-degree misdemeanor, and menacing in violation of Cleveland Codified Ordinances 621.07, a fourth-degree misdemeanor, for the October 9 incident. For the October 10 incident, he was charged with one count of menacing. The two complaints were consolidated for a bench trial on January 12, 2022. The victim was the only witness that testified at trial.

{¶ 4} The trial court found Myles guilty of domestic violence for the incident on October 9, but acquitted him of the menacing charge relating to both October 9 and October 10. The court imposed two years of probation and a fine of $1,000.

**Trial Testimony**

{¶ 5} The testimony of the victim related to the events on both October 9 and October 10. She testified that on October 9, Myles had been drinking before they got into an argument. She was "roughed up a little bit," which, as she testified, meant being "grabbed on" and "tussled with." Because she testified that she did not remember too much about the incident, the court permitted her to review the written statement she provided to the police responding to her 911 call on that day, for the purpose of refreshing her recollection. After reviewing the statement, she appeared to remember the incident better, stating "we did fight and arguing, tussling, and that's about it." As to any injuries, the victim testified that she had "just minor little bruises on her arm from [Myles] grabbing me." When asked if she was afraid at the time, she stated that she was accustomed to the abuse by Myles, so the incident was "normal" in her head. The police took pictures of her bruises, and she filled out an injury form.

{¶ 6} The victim testified she called 911 that day because she needed the police to escort Myles from her residence. The trial court permitted the city to play the 911 recording under the present sense impression hearsay exception, over the defense's objection. In the 911 call, the victim requested the assistance of police for

domestic violence, saying "please hurry up" twice. Myles can be heard in the background while the victim yelled "move away from me."

{¶ 7} After the 911 call from October 9 was played, the victim appeared to be confusing the October 9 and October 10 incidents and testified that the incident on October 9 resulted from Myles wanting sex from her, but later clarified the occasion about sex occurred on the tenth: on that day, Myles got out of bed about eight o'clock in the morning and wanted sex, and they started to "tussle." He went to the kitchen and grabbed a knife, but did not use the knife. He smacked her in the face, although there were no bruises. She called 911 again, and after her 911 call, Myles urinated "all over the house" and tried to destroy various items in her residence.

{¶ 8} After the 911 call on October 10 was played, the victim on her own went on to describe the abusive manner in which Myles treated her during their 14-year relationship. While Myles now claims the testimony constituted improper prior bad acts evidence, there was no objection from the defense to the testimony, which was eventually stopped by the trial court.

{¶ 9} On cross-examination, the victim confirmed that the fight about sex was on October 10, not October 9, and that she remembered the event on the 10th better than on the 9th. She testified that she had never called the police about Myles's behaviors until those two days, which she described as "the worst two days of [her] life." The defense continually questioned her about her poor recollection and inconsistency in her testimony describing the two incidents.

{¶ 10} Because the defense repeatedly challenged the credibility of the victim's testimony, on redirect examination, the city played a video of an officer's body cam that recorded the police investigation of the October 10 incident, over the defense's objection. The city also had the victim read the written statement she provided to the police on October 10: "I got out the bed. Mad about sex. Start fighting. Then let him out — he left out the house and pulled a knife on me." The court permitted the evidence over the defense's objection. In addition, the city also had the victim read her October 9 statement to the police: "[M]e and Roger Myles was [sic] fighting. He ran from the house. He hit me in the face, and he threw me down."

{¶ 11} After the victim's testimony, the trial court admitted the two 911 calls and the body cam video but the court excluded the two written statements as exhibits because the latter did not qualify as hearsay exceptions.[1]

**Appeal**

{¶ 12} On appeal, Myles raises the following assignments of error:

I. The trial court erred by allowing the city to introduce hearsay testimony — namely, past statements to law enforcement — to convict Roger Myles of domestic violence.

---

[1] The trial court's ruling on the exhibits was somewhat confusing. Our reading of page 64-66 of the transcript reflects that exhibit A3 is the October 10 written statement and exhibit B1 is the October 9 written statement. The trial court admitted the two 911 call recordings and the body camera video, but excluded the two written statements, mistakenly referring to them as A3 and A1 (instead of A3 and B1).

II.  The trial court plainly erred by allowing a witness, without prior notice to the defense, to testify about Mr. Myles' alleged past acts to prove that he committed the crimes charged in this case.

III.  Even if these evidentiary errors were not — on their own — sufficient to warrant vacating Mr. Myles's conviction, their cumulative impact deprived impact deprived Mr. Myles of a fair trial.

IV.  Myles's domestic violence conviction is against the manifest weight of the evidence.

## Alleged Hearsay Evidence

{¶ 13}  Under the first assignment of error, Myles argues the trial court erred in admitting the victim's written statements to the police on October 9 and October 10 and the 911 calls made on both days, as well as the body camera video that captured the encounter between the police officers and the victim on October 10.

{¶ 14}  As an initial matter, we note that Myles does not claim that the trial court, as the trier of fact, was confused about the evidence relating to the two complaints or incapable of segregating the proof required for each complaint. Indeed, Myles was only convicted of domestic violence for his conduct on October 9 and acquitted of charges relating to the October 10 incident, which reflects that the trial court was able to separate the evidence and consider each incident separately. As such, we limit our review to the evidence regarding October 9 only, namely, the written statement the victim provided to the police and the 911 call she made on October 9.

{¶ 15}  The decision whether to admit or exclude evidence lies within the trial court's discretion.  *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987),

paragraph two of the syllabus. "'[T]he trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.'" *State v. Maurer*, 15 Ohio St.3d 239, 265, 401, 473 N.E.2d 768 (1984), quoting *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126, 130 (1967).

{¶ 16} We note furthermore that this case was tried to the bench. "When the trial court is the trier of fact, the judge is presumed capable of disregarding improper hearsay evidence, and unless it is demonstrated that the court relied on inadmissible hearsay, a conviction will not be reversed." *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61.

### a. Written Statement to the Police Can be Read Into the Record as Recorded Recollection Under Evid.R. 803(5)

{¶ 17} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Evid.R. 802 prohibits the admission of hearsay except as otherwise provided by the rules of evidence. Myles argues the victim's written statement to the police is inadmissible as hearsay. Our review indicates the trial court properly permitted the victim's written statement to the police to be read into the record but did not admit the written statement as an exhibit.

{¶ 18} The transcript reflects the victim's written statement was first utilized by the city to refresh her memory. On direct examination, the victim had difficulties

recalling the October 9 incident and acknowledged her poor memory. As a result, the city, with the court's permission, had her review her written statement to refresh her recollection. This is proper because a party may refresh the recollection of a witness under Evid.R. 612 ("present recollection refreshed") by showing the witness their prior statement while testifying. *See e.g.*, *State v. Webb*, 8th Dist. Cuyahoga No. 100487, 2014-Ohio-2644, ¶ 25. Subsequently, on cross-examination, the defense repeatedly challenged the credibility and inconsistency of the victim's testimony. Consequently, on redirect examination, the city had the victim read her written statement into the record.

{¶ 19} While hearsay is generally not admissible, there are several exceptions to the hearsay rule. One such exception is the "recorded recollection." Evid.R. 803(5) states:

> (5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

{¶ 20} The staff notes relating to Evid.R. 803(5) states that "[t]he exception gathers its circumstantial guaranty of trustworthiness from the fact that the person having made the statement is on the witness stand subject to oath, cross-examination and demeanor evaluation." For the out-of-court statement to be admissible, "the proponent of the evidence must establish that: (1) the witness has a

lack of present recollection of the recorded matter, (2) the recorded recollection was made at a time when the matter was fresh in the witness's memory, (3) the recorded recollection was made or adopted by the witness, and (4) the recorded recollection correctly reflects the prior knowledge of the witness." *State v. Abduleh*, 10th Dist. Franklin No. 20AP-473, 2021-Ohio-4495, ¶ 19. The out-of-court statement is admissible as recorded recollection when the witness makes the statement while the matter was fresh in his or her memory and the past recollection recorded correctly reflects the knowledge the witness had at the time it was recorded. *State v. Trotter*, 8th Dist. Cuyahoga No. 97064, 2012-Ohio-2760, ¶ 35. If evidence is admitted pursuant to Evid.R. 803(5), "the memorandum or record may be read into evidence." Evid.R. 803(5).

{¶ 21} Here, the foundational requirements for Evid.R. 803(5) were satisfied. Our review of the transcript reflects the victim had difficulties relating the specifics of the event on October 9. She was first given an opportunity to refresh her memory with the written statement, but she still struggled with her recollection of the event on cross-examination. She testified the statement was provided to the police within ten to 20 minutes of the domestic violence incident, after the police arrived at her residence in response to her 911. She testified she wrote the statement herself. As to the fourth requirement, our reading of her testimony reflects the statement represented her experience that prompted her to call 911. *Abduleh* at ¶ 23 ("[W]here the declarant provides affirmative testimony acknowledging they made

the prior statement, and provides no indication that the prior statement was inaccurate or untruthful," the fourth requirement under Evid.R. 803(5) is satisfied.).

{¶ 22} As such, the victim's written statement satisfied the requirements of Evid.R. 803(5) to qualify as recorded recollection and the trial court properly permitted her to read the statement into the record. *See, e.g., State v. Young,* 8th Dist. Cuyahoga No. 110973, 2022-Ohio-3132 (Because all of the foundational requirements of Evid.R. 803(5) were met, the court did not err in allowing the witness to read his prior written statement to police into the record.); *Abduleh*; *State v. Henson*, 1st Dist. Hamilton No. C-060320, 2007-Ohio-725; and *State v. Fields*, 8th Dist. Cuyahoga No. 88916, 2007-Ohio-5060.

{¶ 23} While Evid.R. 803(5) permits a prior statement to be read into the record as recorded recollection under appropriate circumstances, the rule does not permit the written statement to be received as an exhibit. *See, e.g., Fields* at ¶ 21 (having the witness read her written statement to the police was permissible under Ohio Evid.R. 803(5), but receiving the evidence as an exhibit was an abuse of direction). Our review of the record indicates the trial court properly permitted the victim to read her written statement into the record but excluded the written statement as an exhibit, as provided for in Evid.R. 803(5).

### b. 911 Call Admissible as Present Sense Impression

{¶ 24} Myles also challenges the admission of the 911 call. He claims the trial court erred in admitting the recording of the 911 call as the present sense impression exception to the hearsay rule under Evid.R. 803(1). Myles argues that, when the

victim made the 911 call, the alleged domestic violence incident had ended and her statements during the call were merely past observations.

{¶ 25} "911 calls are generally admissible as excited utterances or under the present sense impression exception to the hearsay rule." *State v. Martin*, 2016-Ohio-225, 57 N.E.3d 411, ¶ 59 (5th Dist.). Here, the city introduced and the trial court admitted the 911 call pursuant to the present sense impression hearsay exception, and we therefore limit our review to whether the 911 recording was admissible under Evid.R. 803(1).

{¶ 26} Evid.R. 803(1) defines the present sense impression as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(1). Regarding Evid.R. 803(1), "[t]he key to the statement's trustworthiness is the spontaneity of the statement; it must be either contemporaneous with the event or be made immediately thereafter." *State v. Essa*, 194 Ohio App.3d 208, 2011-Ohio-2513, 955 N.E.2d 429 (8th Dist.), ¶ 126. "'The principle underlying this hearsay exception is the assumption that statements or perceptions, describing the event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness.'" *State v. Dixon*, 152 Ohio App.3d 760, 2003-Ohio-2550, 790 N.E.2d 349, ¶ 12 (3d Dist.), quoting *Cox v. Oliver Machinery Co.*, 41 Ohio App.3d 28, 35, 534 N.E.2d 855 (12th Dist.1987). Accordingly, "Ohio courts have routinely held that 911 calls are admissible as present sense impressions." *Ohio v. Scott*, 1st Dist. Hamilton Nos. C-200385 and C-200403,

2021-Ohio-3427, ¶ 17. *See also State v. Smith*, 2017-Ohio-8558, 99 N.E.3d 1230, ¶ 37 (1st Dist.) ("911 calls are usually admissible under the excited utterance or the present sense impression exception to the hearsay rule").

{¶ 27} "While temporal proximity is critical to a present sense impression analysis, there is no bright line rule as to what amount of elapsed time precludes a finding that the exception applies." *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 42. Some courts have found that the present sense impression exception applies even where the 911 call is made up to an hour after the event perceived. *Id.*, citing *State v. Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, 847 N.E.2d 1237, ¶ 37 (2d Dist.).

{¶ 28} Here, the victim did not specifically testify regarding how much time had lapsed after the domestic violence incident when she made the 911 call. In the 911 recording, she requested the assistance of police for domestic violence, saying "please hurry up" twice. Myles can be heard in the background while she said "move away from me." The urgency in her tone requesting the assistance of the police is indicative of the temporal proximity of the 911 call to the domestic violence incident being reported.

{¶ 29} "A trial court has broad discretion to determine whether a declaration should be admissible under a hearsay exception." *State v. Magwood*, 8th Dist. Cuyahoga No. 105885, 2018-Ohio-1634, ¶ 38, citing *State v. Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992). Having reviewed the record, we do not find an abuse of discretion in the trial court's admission of the victim's 911 call as a present

sense impression pursuant to Evid.R. 803(1).  *See e.g., Dixon, supra*; *State v. Sexton*, 12th Dist. Warren No. CA2018-08-100, 2020-Ohio-153; and *State v. Crowley*, 2d Dist. Clark No. 2009 CA 65, 2009-Ohio-6689.  For all the foregoing reasons, the first assignment of error lacks merit.

**Testimony Regarding the Parties' Relationship**

{¶ 30} Under the second assignment of error, Myles argues the trial court erred in permitting the victim to testify about Myles's past abusive conduct during the parties' 14-year relationship.  He argues such testimony was inadmissible as prior bad acts.

{¶ 31} The transcript reflects that, after the city played the October 10, 911 call, the victim, without being asked a question, provided additional testimony regarding what occurred after she made the 911 call:  Myles urinated all over her house, threw objects around, and tried to destroy her possessions.  She then went on to describe his abusive conduct during the couple's 14-year relationship.  On cross-examination, when asked if she was afraid on October 9, she provided more testimony about his abuse in the past and, when asked about any injuries, she mentioned a concussion she sustained as a result of being hit in the head by Myles ten years ago.  None of the testimony, however, was objected to by the defense.

{¶ 32} As Myles acknowledges on appeal, because the defense did not object at trial to the testimony he now challenges, we review the claim for plain error.  Ohio's criminal law distinguishes between errors that are objected to by a defendant at trial and those that are not; "[w]hen the defendant forfeits the right to assert an

error on appeal by failing to bring it to the trial court's attention in the first instance, an appellate court applies plain-error review." *State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 17; Crim.R. 52. "Under this review, the defendant bears the burden of 'showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice.'" *Id*. quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16.

{¶ 33} Evid.R. 404(B) prohibit the use of "other crimes, wrongs, and acts * * * to prove the character of the accused in order to show that he acted in conformity therewith." Evid.R. 404(B). Here, however, we need not address whether the victim's testimony is admissible under Evid.R. 404(B) because, under a plain error review, we find Myles fails to meet his burden of demonstrating that, but for the alleged error, the outcome of the trial would have been otherwise. The victim's testimony about the event on October 9, found credible by the trial court and supported by her 911 call and written statement to the police on that day, are substantial evidence for his conviction of domestic violence. As such, we find no plain error regarding the challenged testimony. The second assignment of error lacks merit.

{¶ 34} Under the third assignment of error, Myles argues the cumulative effect of the errors in admitting the victim's statements to the police and her testimony about his past conduct deprived him of a fair trial. Based on our analysis in the first two assignments of errors, we find that Myles was not denied his right to

a fair trial and the doctrine of cumulative errors inapplicable in this case. The third assignment of error is overruled.

**Weight of the Evidence**

{¶ 35} Under the fourth assignment of error, Myles argues his conviction of domestic violence was against the weight of the evidence. He argues that the only evidence for his conviction is the victim's testimony, which he claims is not credible.

{¶ 36} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. Unlike a claim that the evidence is insufficient to support a conviction, which raises a question of law, manifest-weight challenges raise factual issues. When a defendant argues his or her conviction is against the manifest weight of the evidence, the court,

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 37} Myles was convicted of domestic violence as defined in R.C. 2929.15, which states "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Here, the victim testified that on the day of the

incident, Myles had been drinking and the two got into an argument. She was "roughed up a little bit," which, as she testified, meant being "grabbed on" and "tussled with." She testified she sustained bruises from Myles's grabbing her and the police officers took pictures of the bruises. Her 911 call and her statement to the responding police officers supported her testimony about the domestic violence incident.

{¶ 38} While Myles questions the credibility of the victim's testimony, we note that although a reviewing court considers the credibility of witnesses in a challenge to the manifest weight of the evidence, it does so "with the caveat that the trier of fact is in the best position to determine a witness'[s] credibility through its observation of his or her demeanor, gestures, and voice inflections." *State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014-Ohio-2181, ¶ 39. A factfinder is free to believe all, some, or none of the testimony of the witness. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

{¶ 39} Having reviewed the record, we conclude that this is not one of the exceptional cases where the evidence weighs against the conviction or where the trier of fact lost its way and created a manifest miscarriage of justice in finding Myles guilty of domestic violence. The fourth assignment of error is without merit.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, P.J., and
MARY J. BOYLE, J., CONCUR