[Cite as *State v. Glover*, 2019-Ohio-5211.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180572 |
| | | TRIAL NO. 18CRB-13913 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| SHAWNAY GLOVER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: December 18, 2019

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Jon Vogt,* Assistant City Prosecutor, for Plaintiff-Appellee,

*James Anzelmo*, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1} Shawnay Glover appeals her conviction, after a jury trial, for assault. In three assignments of error, Glover contends that the trial court improperly required her to prove self-defense, that her conviction is based on insufficient evidence, and that her conviction is against the manifest weight of the evidence. Finding her assignments of error without merit, we affirm the trial court's judgment.

## Factual Background

{¶2} Shawnay Glover was charged with one count of assault for an altercation with Erica Jackson, the mother of Glover's boyfriend's son. Glover, her daughter, and her boyfriend Joshua Nettles were at the home of his parents, Patricia Collier and Albert Beecher. They were awaiting the arrival of Nettles's son Josh for his weekend visit. When Josh still had not arrived by approximately 9:30 p.m., Glover and Nettles went to a drive-thru to get dinner. Jackson arrived at the home while the two were gone.

### 1. Erica Jackson's Testimony

{¶3} Jackson testified that when she arrived, Collier and Glover's daughter were sitting on the porch. As she approached Collier, she smelled alcohol. Jackson testified that she was upset that Glover's daughter was there because she does not like Glover and does not want her son around her. Jackson decided to take her son and leave. As Jackson turned to go down the steps, Collier rushed her and punched her in the face. Jackson hit her back, and the two began to fight. Collier demanded that Jackson give her back the shoes Josh was wearing, so she removed the shoes and threw them in the grass.

{¶4} Jackson left with her son, but after walking almost two blocks, he started crying because his feet hurt. Jackson went back to Collier's home to retrieve

the shoes. Collier approached her again and punched her in the face twice. As she was putting the shoes on her son, she heard a car pull up behind her. When she turned around, Nettles was holding her by the throat.

{¶5} According to Jackson, Nettles accused her of hitting his mother, which she promptly denied. Jackson grabbed his throat, and he slammed her to the ground. He pinned her down from the back of her neck, and repeatedly kicked her in her face. Then Glover entered the fray, sat on Jackson's shoulder, and began to punch her in the face. Nettles continued to stomp on her face, while Glover continued to punch her in the face. Glover punched her over 20 times. Nettles finally let her up, and she grabbed her son and left. She walked to a friend's house and called the police.

{¶6} Officer Aubrey Pitts responded, and took photographs of her wounds. Jackson was arrested and charged with assaulting Collier. Pitts took her to the hospital where she was treated for her wounds. After her release, Jackson was taken to jail, charged, and released. Four or five days later, Officer Blackwell came to her home and took additional pictures.

2. Officer Aubrey Pitts's Testimony

{¶7} Officer Pitts testified that she responded to Collier's home to investigate an alleged assault on Collier. While Pitts was investigating Collier's assault, a second call came in from Jackson. Pitts responded to that call because of Collier's complaint against Jackson. When Pitts arrived, she observed severe bruising and swelling on Jackson's face, knots on her forehead, and swollen eyes. Pitts took photographs of the injuries and transported Jackson to the hospital.

{¶8} Pitts made an offense report about the assault against Jackson because

Jackson could only identify her assailant as "Wink." Pitts forwarded the report to Detective Carl Blackwell, a police investigator, to determine the identity of "Wink."

### 3. Detective Carl Blackwell's Testimony

{¶9} Blackwell testified that he contacted Jackson and interviewed her one week later. He was surprised that she had two black eyes, and took photographs of her injuries. Jackson informed him that "Wink" had a Facebook page, and Blackwell found her page and identified the assailant as Shawnay Glover. Blackwell called Glover, and she agreed to meet him at the police station for an interview.

{¶10} Glover told Blackwell that Jackson started the fight, and she hit back in self-defense. She further explained that she had blacked-out during the fight and could not remember everything that happened. Blackwell did not observe any injuries to Glover except a small scratch on her hand that did not appear to be fresh, so he charged her with assault.

{¶11} After Blackwell testified, the state rested. The trial court denied Glover's Crim.R. 29 motion for an acquittal.

### 4. Patricia Collier's Testimony

{¶12} Collier testified on behalf of Glover, and stated that after Jackson assaulted her, Beecher came outside and told her to leave. As Jackson turned to leave, Glover and Nettles were walking toward the home. When Jackson saw Glover, she hollered, "You're the bitch I've been looking for." Jackson then pushed Glover and started swinging at her. Glover stepped back, and Jackson swung at her again. Then the two began to fight. They fell onto the ground and were rolling around. Beecher, Nettles, and a neighbor broke up the fight. Glover went to her daughter, and Jackson grabbed her son and said, "This is not over, I'll be back, I'm going to

4

bring my family, I'm going to bring my uncles and my sister." Both Jackson and Glover left after the fight.

### 5. Albert Beecher's Testimony

{¶13} Beecher also testified that Jackson called Glover a bitch and started the fight. Initially both were standing, but at one point, they both fell to the ground. While they were fighting in the front yard, Nettles gathered the children from the bottom of the steps and took them to the porch. Then, Nettles, a neighbor, and Beecher intervened in the fight. Beecher grabbed Jackson, and Nettles grabbed Glover, and they pulled the women apart. Jackson broke free, and the two fought briefly before the men were able to separate the two. Jackson continued to taunt Glover and told her that she would return and would get her. Jackson left moments later. Beecher did not observe any injuries to either woman.

### 6. Shawnay Glover's Testimony

{¶14} Shawnay Glover testified on her own behalf. She arrived at the home at 1 p.m. Nettles and she were awaiting the arrival of Nettles's son to take the children to the park and to get ice cream. At approximately 9:30 p.m., she left with Nettles and went to a drive-thru to get food for Collier and Glover's daughter. They were gone for approximately 15 minutes. When they returned, they heard yelling.

{¶15} Nettles parked the car, and she observed Beecher holding Collier up on the porch steps and Jackson standing in the grass. Nettles was in front of her and asked his parents what had happened. Glover testified that Jackson immediately approached her and said, "This is the bitch I'm looking for." Jackson chest bumped her, pushed her, and attempted to punch her. Glover stepped back and was not hit, but Jackson swung at her again. Jackson was angry, and was yelling and spitting at

her.

{¶16} Glover grabbed her hand, and Jackson tried to hit her with her other hand. They began to wrestle and punch each other. They fell to the ground, and initially Jackson was on top of her hitting her. Glover managed to roll over and was on top of Jackson when the men intervened.

{¶17} Glover testified that she was scared and defended herself by punching Jackson in the face as hard as she could. Glover admitted that she became uncontrollable during the fight and could not remember the entire fight. She further testified that she was wearing rings on her fingers during the altercation. After the fight, she had a few scratches on her face and chest, a gash on her pinky, and a sore wrist. She did not seek medical treatment.

{¶18} Glover rested, but did not renew her motion for an acquittal after all the evidence was submitted. The matter was submitted to the jury for deliberation and the jury instructions included an instruction on self-defense. The jury ultimately found Glover guilty as charged. The trial court sentenced her to 180 days in jail.

## The Accused's Burden to Prove Self-defense

{¶19} In her first assignment of error, Glover contends that the trial court violated her Second, Fifth, and Fourteenth Amendment rights by requiring her to prove self-defense. We first note that this case did not involve a firearm, and therefore, does not implicate Glover's right to bear arms.

{¶20} We review Glover's argument under a plain-error standard because she did not raise the issue of the constitutionality of the self-defense statute to the trial court. "Under the plain-error standard, we will not reverse a conviction unless, but for the error, the outcome clearly would have been different." *State v. Smith*, 2017-Ohio-8558, 99 N.E.3d 1230, ¶ 46 (1st Dist.).

6

{¶21} The version of R.C. 2901.05 in effect at the time of the offense states, in relevant part, "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A).

{¶22} As Glover acknowledges, the United States Supreme Court has previously upheld the constitutionality of Ohio's practice of requiring an accused to prove self-defense as an affirmative defense in *Martin v. Ohio*, 480 U.S. 228, 233-234, 107 S.Ct. 1098, 94 L.Ed.2d 67 (1987). However, Glover argues that the United States Supreme Court's more recent decision in *Dist. of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 1 L.Ed.2d 637 (2008), requires a different result. Specifically, Glover contends that the right to self-defense is paramount and requiring an accused to prove self-defense is now unconstitutional.

{¶23} However, Glover has misconstrued the significance of *Heller*. In *Heller*, the Court held that the Second Amendment protects an individual's right to possess a firearm. *Id.* at 635. Although the Court recognized the right of self-defense, nothing in *Heller* purports to alter the burden of proof regarding self-defense. *See State v. Lechner*, 4th Dist. Highland No. 19CA3, 2019-Ohio-4071, ¶ 37 (finding that the "reliance upon *Heller* for an argument that the applicable version of Ohio's self-defense statute was unconstitutional [is] misplaced.").

{¶24} Accordingly, we overrule the first assignment of error.

### The Sufficiency of the Evidence

{¶25} In her second assignment of error, Glover argues that the conviction is based on insufficient evidence. In response, the state claims that Glover waived this argument because she failed to renew her Crim.R. 29 motion after all the evidence had been presented at trial.

7

{¶26} The Ohio Supreme Court has concluded that the failure to make a Crim.R. 29(A) motion during a trial does not waive an appellate argument concerning the sufficiency of the evidence. *See State v. Jones*, 91 Ohio St.3d 335, 346, 744 N.E.2d 1163 (2001). An accused's "not guilty" plea preserves the right to object to the alleged insufficiency of the evidence because the state must prove each element by proof beyond a reasonable doubt. *See State v. Carter*, 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992); *State v. Sims*, 169 Ohio App.3d 579, 2006-Ohio-6285, 863 N.E.2d 1110, ¶ 22 (1st Dist.).

{¶27} However, the sufficiency-of-the-evidence standard does not apply to an argument that an affirmative defense, such as self-defense, was rejected because it does not challenge the sufficiency of the state's evidence. *See State v. Dykas*, 185 Ohio App.3d 763, 2010-Ohio-359, 925 N.E.2d 685, ¶ 18 (8th Dist.) (explaining that "when reviewing a claim by a defendant that evidence supports his claim of self-defense, the manifest-weight standard is the proper standard of review because a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks to relieve himself from culpability); *State v. Bundy*, 2012-Ohio-3934, 974 N.E.2d 139, ¶ 30 (4th Dist.) (concluding that "[w]hether a defendant established an affirmative defense does not relate to whether the state presented sufficient evidence to support the essential elements of the crime charged, but instead, it seeks to relieve the defendant of criminal responsibility.").

{¶28} Because the assignment of error does not challenge the sufficiency of the state's evidence, we will address the assignment of error under a manifest-weight-of-the-evidence standard. *See Dykas* at ¶ 18; *Bundy* at ¶ 31.

Manifest Weight of the Evidence

{¶29} When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶30} Generally, credibility is an issue for the trier of fact to resolve. *See State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001). "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047,¶ 20, citing *State v. Konya*, 2d Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶31} To establish self-defense in a nondeadly-force case, a defendant must prove, by a preponderance of the evidence that: "(1) [s]he was not at fault in creating the situation giving rise to the altercation; (2) that [s]he had reasonable grounds to believe and an honest belief, even if mistaken, that she needed to use some force to defend herself against the imminent use of unlawful force; and (3) that the force used was not likely to cause death or great bodily harm." *State v. Salaam*, 2015-Ohio-

9

4552, 47 N.E.3d 495, ¶ 15 (1st Dist.), quoting *State v. Browner*, 1st Dist. Hamilton No. C-100247, ¶ 8 (Dec. 15, 2010).

**{¶32}** Here, although several witnesses testified that Jackson initiated the fight by pushing and swinging at Glover, Jackson testified that Glover and Nettles attacked her. The jury was in the best position to determine the credibility of the witnesses and rationally could have believed Jackson's version of the altercation and conclude that Glover was at fault in creating the situation. We cannot conclude that the jury, in resolving the conflicting evidence, clearly lost its way when it determined that appellant did not establish self-defense.

**{¶33}** Therefore, we conclude that Glover's assault conviction was not against the manifest weight of the evidence, and we overrule her second and third assignments of error.

### Conclusion

**{¶34}** Having considered and overruled all of Glover's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **WINKLER, JJ.,** concur.

Please note:

    The court has recorded its own entry this date.