[Cite as *State v. Rainey*, 2023-Ohio-4043.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230015 |
| | | TRIAL NO. B-1405017 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| AMOND RAINEY, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: November 8, 2023


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**Zayas, Presiding Judge.**

{¶1}  Amond Rainey appeals his conviction for murder after a trial by a three-judge panel.  In three assignments of error, Rainey contends that his conviction is not supported by sufficient evidence and is contrary to the manifest weight of the evidence, and he was denied the effective assistance of counsel.  For the following reasons, we affirm the trial court's judgment.

## Factual Background

{¶2}  On August 25, 2014, Lyntra Eves went to work while her boyfriend Amond Rainey watched her two-year-old son Josiya.  That afternoon, Rainey drove Josiya to Children's Hospital with life-threatening head injuries.  According to Rainey, the child was brushing his teeth when he fell from the toilet onto the floor.  Josiya was nonresponsive when he arrived, and staff resuscitated the child. Josiya had emergency surgery to relieve the pressure on his brain.  Two days later, Josiya was declared brain dead.  Rainey was charged with aggravated murder with a capital specification and murder.  Rainey waived his right to a jury trial and elected to have a three-judge panel decide the matter.

{¶3}  At the trial, Natalie Bailey, Josiya's great-aunt, testified that she went to Children's Hospital the day Josiya was hospitalized.  She heard Rainey tell his family that he did not do anything, he was sorry, and it was an accident.  Josiya's uncle on his father's side heard what Rainey said and attempted to fight him, so Bailey left with Rainey.  While Rainey was in her car, she heard him on the phone saying that he was sorry, he did not mean to do it, and it was an accident.

{¶4}  Josiya's mother, Lyntra Eves, testified that when she went to work that morning, Josiya was asleep.  He had no bumps, bruises, or scratches.  On Mondays, Rainey would watch Josiya because he had the day off.  Eves preferred to have Rainey

watch Josiya because he came home with scratches and bruises when he went to daycare. She had never seen Rainey lift a hand toward Josiya.

{¶5} Isaiah Eves, Lyntra Eves's brother, testified that he had had a few disagreements with Rainey in the past. When they had a disagreement about his mother's car, Isaiah testified that Rainey was aggressive, escalating to violence. Isaiah testified that Rainey spoke aggressively and they "wound up exchanging hands." Rainey threatened to crash his car with Josiya in the car, but Isaiah was not concerned for Josiya's safety.

{¶6} Detective Michelle Longworth, a sergeant with the Cincinnati Police Department ("CPD"), testified that she assisted Detective Morton with the investigation. She responded to Children's Hospital after receiving a report of a severely injured child whose injuries were not consistent with the explanation of the cause of the injuries. Longworth went to Josiya's home to look for evidence of the cause of the injuries. Longworth discovered garbage bags inside a garbage can outside the home. One of the bags had an adult T-shirt, a soiled diaper, and a onesie. The onesie appeared to have blood on it. She also found a bag of soiled towels and a T-shirt, with red stains, in the laundry room, and a pink towel with red stains in a bedroom. One of the criminalists found blood dripping from a vacuum hose in the living room.

{¶7} Detective Charlene Morton of CPD testified that she and Longworth met with medical staff to discuss the injuries and the explanation from Rainey as to how the injuries occurred. They met with the child's mother who stated that Rainey treated Josiya as his own son and would not hurt him. They spoke with Rainey who was the only adult present when the injuries occurred. Morton testified that she had

3

investigated many child-abuse cases where the perpetrator had no prior police contact or history of violence.

{¶8} Morton went to the apartment where the family lived with Detectives Longworth, Witherell and Lewis. During the initial walk-through, they did not see any evidence of blood. They found a vacuum in the living room with blood dripping from the nozzle, a bloody towel in a bedroom, and a bag of towels by the washer and dryer. Longworth found clothing in the outside garbage can.

{¶9} Latrice Eves, the younger sister of Lyntra, testified that she went to the hospital the day the injuries occurred. When she asked Rainey what happened, he initially said they were in the bathtub, but then said Josiya was brushing his teeth. Latrice was present when Rainey fought with her brother. She testified that Rainey was angry and aggressive, and she was frightened. When Rainey said he would crash the car while Josiya was in the car, she did not let Rainey leave with Josiya.

{¶10} Dr. Kathi Makaroff, an expert in child abuse, testified that Josiya's extensive injuries were due to physical abuse and were consistent with blunt force trauma. A head CAT scan revealed a very large subdural hematoma and a parietal fracture, both on the left side, and bilateral occipital fractures. A CAT scan of his abdomen showed a liver laceration and adrenal bleeding from both adrenal glands. Makaroff testified that the injuries could not be caused from a fall from a toilet based on a reasonable degree of medical certainty. Makaroff further testified that resuscitative efforts could not cause the injuries to the adrenal glands, but in very rare cases, a liver laceration could be caused by CPR.

{¶11} Dr. William Ralston, Chief Medical Examiner for the Commonwealth of Kentucky and former Chief Deputy Coroner and Senior Forensic Pathologist for

Hamilton County, conducted the autopsy on Josiya. Ralston noted a recent bruise under the child's chin, injuries to his forehead and the bridge of his nose, swelling of the left eye, bruising on the back of his right ear, a scabbed injury to the right cheek, a contusion over the right cheek, a contusion on the upper back, bruising on both buttocks, and injuries to the right clavicular area. Based on the distribution of injuries, one fall could not cause all of the injuries. During posterior dissection, Ralston found a contusion deep in the soft tissue of the buttocks area caused by a blunt force impact.

{¶12} Ralston noted three separate skull fractures and a separation of the sutures of the skull. The skull fractures could not have occurred as a result of a single fall or a single impact. Ralston testified that Josiya had severe brain injuries, including a subdural hemorrhage, subarachnoid hemorrhage or bleeding over the outer surface of the brain, cerebral edema, and disruption of the central nervous system tissue. Josiya had retinal hemorrhages in his eyes and optic nerve sheath hemorrhages. Ralston determined that the cause of death was traumatic brain injury due to blunt force head trauma, and the manner of death was homicide.

{¶13} Detective Donald Werling was a criminalist at the scene. He collected a toothbrush from the sink. He recovered a bag next to the outside garbage can with an adult white T-shirt, two paper towels, and a green cloth, a bag of clothing in the garbage can from the outside garbage can, a bag with a pink towel and Q-tips in the bedroom. Werling also collected the shoes and clothing that Josiya wore to the hospital, but there was no blood on those items. Werling measured the height of the sink and the toilet and the distance between the two. The lid and the toilet seat were up when he arrived. Werling found no evidence of blood in the bathroom. The male

T-shirt, paper towels, pink towel, and vacuum hose had blood which matched Josiya's DNA.

**{¶14}** Keith Witherell, a police officer for CPD for almost 25 years, with 17 years in the Homicide Unit, was the lead investigator on the case. Witherell reviewed the security video from Children's Hospital. The video showed that Rainey brought the child to the hospital at 12:49 p.m. Rainey had been at home with Josiya and his seven-year-old daughter Ashira when Josiya was injured. Witherell also recovered the 911 call Rainey made at 12:17 p.m.

**{¶15}** After Witherell's testimony, the state submitted the deposition testimony of Emily Detrick, a social worker previously employed by Children's Hospital. Detrick was part of the child-abuse team. When Rainey brought Josiya to the emergency room, she responded to the trauma pager. Detrick met with Rainey to learn how the injuries occurred. Rainey told her that he was in the bathroom with both children who were brushing their teeth in preparation for their dental appointments. Josiya was standing on the toilet when Rainey left the bathroom. Ashira told Rainey that Josiya was brushing his teeth when she left the bathroom. Rainey heard a fall and found Josiya on the tile floor in the bathroom. Rainey was able to comfort Josiya, and he placed the child on the bed and left. When he returned, Josiya was limp, so Rainey called 911. The 911 operators were taking too long, so Rainey hung up the phone and drove Josiya to the hospital. Josiya was having difficulty breathing. Detrick was concerned that the injuries were not consistent with one fall, so after consulting with Dr. Makaroff, a report was made to the police.

**{¶16}** The state rested, and Dr. Kenneth Monson, who had a bachelor's degree, master's degree, and Ph.D. in mechanical engineering, testified for the defense.

Monson testified as an expert in the field of biomechanical engineering. Monson testified that based on current research and his analysis, the injuries could have been caused by an accidental fall. Monson also confirmed that the injuries could have been caused by blunt force.

{¶17} Dr. Carl Wigren, a pathologist and licensed physician with board certification in anatomic and forensic pathology, explained that when there is a skull fracture, the blood vessels underlying the area rupture and bleed. Impact, skull fracture, and the rupture of blood vessels happen simultaneously. Wigren opined that Josiya sustained a fall that impacted his head and caused multiple fractures which led to a series of events secondary to the main impact of the head. He further testified that the liver laceration could have been caused by falling on the metal toilet paper holder in the bathroom.

{¶18} Ashira testified that she was home with her dad and Josiya when the injuries occurred. At the time, she was seven years old. That morning, she ate breakfast, brushed her teeth, and took a shower. While she was in the shower, Josiya came into the bathroom and pulled on the shower curtain. Ashira got out of the shower and went into the bedroom she shared with Josiya and got dressed. While getting dressed, she heard a "boom," and saw her dad run out of his bedroom and into the bathroom. Ashira followed her dad into the bathroom and saw her dad lean over and try to wake up Josiya. Josiya's eyes were closed. Her dad called 911, and Ashira had to finish dressing to go to the hospital. Ashira testified that when they arrived at the hospital, her mother was there to meet her in front of the hospital, and she left with her mother.

{¶19} After Ashira's testimony, the defense rested. The court found Rainey not guilty of aggravated murder and guilty of murder in violation of R.C. 2903.02(B).

## Sufficiency and Manifest Wright

{¶20} In his first and second assignments of error, argued together, Rainey argues that his conviction for murder was not supported by sufficient evidence and was contrary to the manifest weight of the evidence. Rainey contends that the state failed to prove that he injured Josiya and that the injuries were due to child abuse.

{¶21} When reviewing a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶22} As to the weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Glover*, 1st Dist. Hamilton No. C-180572, 2019-Ohio-5211, ¶ 29, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶23} Rainey was convicted of felony murder in violation of R.C. 2903.02(B), which required the state to prove that Rainey caused Josiya's death "as a proximate result of the offender's committing * * * an offense of violence that is a felony of the first or second degree * * *." The underlying offense of violence was felonious assault. Thus, the state had to prove that Rainey caused serious physical harm to Josiya which resulted in his death. *See State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, syllabus (holding that "[f]elony murder as defined in R.C. 2903.02(B),

8

with the underlying offense of violence being felonious assault, is supported by evidence that establishes that the defendant knowingly caused physical harm to the victim").

{¶24} The evidence was undisputed that Josiya was fine when his mother left for work that morning, and Rainey was the sole adult present when Josiya was injured. When Rainey brought Josiya to the hospital, Josiya had three separate skull fractures, severe brain injuries, including a subdural hemorrhage, subarachnoid hemorrhage or bleeding over the outer surface of the brain, cerebral edema, disruption of the central nervous system tissue, retinal hemorrhages in his eyes, optic nerve sheath hemorrhages, a liver laceration, and bruises on his back and under his chin.

{¶25} Makaroff testified that Josiya's extensive injuries were due to physical abuse and could not have been caused by a single fall. Ralston concluded that the cause of death was blunt force head trauma, and the manner of death was homicide. Ralston testified that a fall would not have caused the severe head injuries sustained by Josiya, and the severe head trauma caused his death. Based on the distribution of injuries, Ralston testified that one fall could not cause all of the injuries. Although Monson and Wigren testified that Josiya's injuries could have been accidental, the court believed the testimony of the state's experts.

{¶26} Viewing the evidence in a light most favorable to the state, the state presented sufficient, competent, and credible evidence that Josiya died as a proximate result of Rainey's act of felonious assault. This is not an exceptional case in which the evidence weighs heavily against the conviction.

{¶27} We overrule the first and second assignments of error.

### Ineffective Assistance of Counsel

{¶28} In his third assignment of error, Rainey argues that he was denied the

effective assistance of trial counsel where counsel failed to engage expert testimony regarding Rainey's lack of propensity to violence.

**{¶29}** To prevail on an ineffective-assistance-of-counsel claim, Rainey must show that trial counsel's performance fell below an objective standard of reasonableness, and he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, Rainey must establish that, but for counsel's errors, there is a reasonable probability that the result of trial would have been different. *See State v. Patt*on, 1st Dist. Hamilton No. C-190694, 2021-Ohio-295, ¶ 29.

**{¶30}** Rainey argues his counsel was ineffective for failing to call a psychologist to present expert testimony on his lack of propensity for violence. Based on the state of this record, any testimony that a psychologist would have provided is purely speculative, and Rainey cannot demonstrate that the outcome of the proceedings would have been different had his counsel hired such an expert. *See id.* at ¶ 31.

**{¶31}** Accordingly, we overrule Rainey's third assignment of error.

## Conclusion

**{¶32}** Having overruled Rainey's three assignments of error, we affirm the trial court's judgment.

Judgment affirmed.


**BERGERON** and **KINSLEY, JJ.,** concur.


Please note:

The court has recorded its own entry this date.