[Cite as *State v. Bradford*, 2024-Ohio-2233.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230455<br>TRIAL NO. 23CRB-9124 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| PIERRE BRADFORD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 12, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Ashton Tucker*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

**{¶1}** Pierre Bradford was convicted, after a jury trial, of violating a protection order. In two assignments of error, Bradford argues that the trial court erred by permitting other-acts testimony that was irrelevant and prejudicial, and his conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence.

## Factual Background

**{¶2}** Bradford was charged with violating a protection order that prohibits him from entering Fanta Spell's "place of employment," requires him to not be present within 500 feet of Spell, and prohibits him from initiating or having contact with Spell or her places of employment. Bradford pled not guilty and requested a jury trial.

**{¶3}** Prior to trial, the city filed a notice of intent to introduce other-acts evidence to show intent, knowledge, and absence of mistake. The city intended to elicit testimony from Spell regarding Bradford's criminal conduct that ultimately resulted in the issuance of the protection order. Bradford filed a motion in limine seeking to prevent the other-acts testimony. At the hearing on the motion, the city explained that Spell would testify to the following facts: that Bradford threw urine on her while she was outside of the streetcar's office at the streetcar facility. The purpose was to give the jury context and "make[] it clearer for the jury as to why a protection order was asked for in the first place."

**{¶4}** Bradford argued that the prior conviction was inadmissible and prejudicial, and had no probative value because Bradford was not challenging the validity or service of the protection order. Bradford further argued that the factual findings by the court that issued the order had been redacted, and allowing the witness

to testify to the underlying facts had no probative value and was highly prejudicial.

{¶5} The court concluded that the testimony should not be analyzed as prior bad acts because the acts were relevant to the issuance of the order and provided the jurors with context regarding the issuance of the protection order, and that the probative value outweighed the prejudice. The court offered to give a limiting instruction when the evidence was introduced.

### Trial Testimony

{¶6} The city's first witness was Donna Faulks who is employed as a supervisor for the streetcar. She supervises the streetcar operators and is responsible for track access. Fanta Spell is a streetcar operator who is under the supervision of Faulks. Faulks knew that Spell had obtained a protection order against Bradford. Faulks also knew Bradford from when she was a streetcar operator.

{¶7} On May 29, 2023, Faulks was conducting an external ride evaluation of Spell who was operating a streetcar. After completing Spell's evaluation, Faulks was driving to the next streetcar to complete another external ride evaluation. As she approached 12th and Vine Streets, she looked to her right and saw Bradford standing on a streetcar platform. Faulks knew that Spell was operating a streetcar that would approach that platform in a few stops, so she decided to warn Spell and stop her from approaching the platform. Faulks, who was driving a marked city of Cincinnati supervisor vehicle, turned on her hazard and operational lights. Bradford saw her car and went north on Vine Street. Faulks drove to the streetcar maintenance and operations facility ("MOF") at 1927 Race Street and informed her supervisor that she had seen Bradford. Faulks testified that the streetcar workplace is a 3.5 mile loop with

18 stops through downtown Cincinnati. The platforms are leased to SORTA by the city.

{¶8} Fanta Spell testified that she is employed as a streetcar operator. Bradford objected when the prosecutor asked Spell how she knew Bradford. Prior to her response, the trial court instructed the jury that the testimony is "being admitted to provide context as to the issuance of the civil protection order. It is not received and you may not consider that prior conduct for any other purpose." Spell testified that she knew Bradford "from him boarding the streetcar and seeing him outside the streetcar." Spell was asked why she filed a petition for a protection order against Bradford, and over objection, Spell testified, "Because on June 16th of 2022, there was an assault against me by Mr. Bradford who, outside of my employer, waited for me to come outside and he proceeded to throw urine on me." At the time she obtained the protection order, Spell was a streetcar operator.

{¶9} A side bar discussion occurred, and Bradford objected to the testimony that he committed an assault. Bradford was charged with assault, but convicted of menacing. The court instructed the jury to disregard the word "assault." A redacted copy of the protection order was admitted into evidence by agreement of the parties. All of the factual findings were redacted.

{¶10} Spell testified that when she returned to MOF and got off the streetcar, she learned that Bradford had been at the streetcar platform. When the streetcar stops at a platform, she is approximately two feet from the platform. Spell further testified that she had no contact with Bradford that day and did not see him at the 12th and Vine stop.

4

{¶11} Sergeant Linda Sellers, who works for the Cincinnati Police Department, was working a streetcar detail that day. As she was signing in, she learned that Bradford had been on the platform. Sellers spoke with Faulks, reviewed the protection order, went back to the district, and eventually filed charges.

{¶12} Deputy Katie Carrier testified that she ordinarily serves protection orders at the jail. The court called for a brief side bar, then informed the jury that the parties stipulated that Bradford was served with the protection order. No further questions were asked of Carrier.

{¶13} Again the trial recessed briefly, and Bradford requested a mistrial due to the testimony that Bradford assaulted Spell, which the court overruled. Then Bradford moved for a judgment of acquittal because Box 13 on the protection order does not specify that Bradford is prohibited from streetcar platforms. Box 13 provides a space for the trial court to issue further orders. He further argued that Bradford had no contact with Spell and did not violate the protection order.

{¶14} The city argued that Bradford violated the provision that states: "Respondent shall not enter the residence, school, business, place of employment of the protected party." The city contended that the streetcar platforms constitute the place of employment. The court overruled the motion, concluding that the jury should determine whether the platform "falls within the parameters of the protection order."

{¶15} Both parties rested and proceeded to closing arguments. The city argued to the jury that Bradford violated the provision that prohibited him from entering Spell's place of employment because the streetcar, the headquarters, and the platforms are part of the place of employment. The order specifically included "the buildings, the grounds, and parking lots," and the platform is part of the grounds.

Bradford argued that he was prohibited from Spell's workplace at MOF, but not the streetcar platforms. The jury found Bradford guilty of violating the protection order in violation of R.C. 2919.27.

{¶16} Bradford appealed, and in two assignments of error, Bradford argues that the trial court erred by permitting other-acts testimony that was irrelevant and prejudicial, and his conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence.

### Admissibility of Other-Acts Evidence

{¶17} The admissibility of other-acts evidence is a question of law that we review de novo. *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22.

{¶18} Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Similarly, R.C. 2945.59 provides that:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the

defendant.

**{¶19}** Other-acts evidence may not be used to establish a defendant's propensity to commit crime or to demonstrate that an accused committed the crime in question because of her or his proclivity to commit crime in general. *Hartman* at ¶ 21. To be admissible, the other-acts evidence must be "probative of a separate, nonpropensity-based issue" and "must go to a 'material' issue that is actually in dispute between the parties." *Id.* at ¶ 22, 27. Thus, this court must analyze whether the other-acts evidence was (1) "relevant to the particular purpose for which it [was] offered" and (2) relevant "to a material issue that is actually in dispute between the parties." *Id.* at ¶ 26-27.

**{¶20}** In this case, the state sought to introduce the facts of the underlying crime that resulted in the issuance of the protection order. The sole purpose was to provide the jury with context as to the issuance of the protection order. Bradford argued that the facts of the underlying conviction were irrelevant because Bradford was not challenging the validity or service of the protection order, and the underlying facts were extremely prejudicial.

**{¶21}** The trial court concluded that the testimony was not other-acts evidence, was admissible to provide context to the jury about the issuance of the protection order, and that the probative value outweighed any prejudice.

**{¶22}** "Context" is not a permissible purpose under Evid.R. 404(B). Other-acts evidence is admissible when the other acts demonstrate the "setting" of a case and are part of the "immediate background" of the charged offenses. *State v. Warth*, 1st Dist. Hamilton No. C-220477, 2023-Ohio-3641, ¶ 57; *State v. Fritsch*, 1st Dist. Hamilton No. C-220570, 2023-Ohio-2676, ¶ 13; *State v. Mincey*, 2023-Ohio-472, 208

N.E.3d 1043, ¶ 19 (1st Dist.). "However, this theory is limited to those events that are 'contemporaneous' with the charged conduct and necessary to add 'meaning and context' to other, relevant testimony." *In re J.P.*, 1st Dist. Hamilton Nos. C-220647 and C-220648, 2023-Ohio-4816, ¶ 53. Here, the offense that prompted the protection order occurred in 2022, and was not contemporaneous with the protection-order violation. *See id.* Moreover, the validity of the protection order was not a material issue in the case because Bradford stipulated to the validity and service of the protection order. Therefore, the trial court erred in admitting the testimony. *See id.* at ¶ 55.

{¶23} On appeal, the city further argues that the testimony was admissible to explain the victim's state of mind and lack of mistake. Those arguments were not raised in the trial court and are waived. Moreover, the arguments are without merit because the victim's state of mind was not an issue in this case. Spell never saw Bradford on the platform and was unaware of his presence until after the alleged violation. Admission for lack of mistake focuses on the defendant's conduct and whether the prior acts show that the defendant acted purposefully, rather than accidentally or mistakenly, in committing the current offense. *See State v. Bey*, 8th Dist. Cuyahoga No. 106745, 2019-Ohio-1884, ¶ 55. The facts of the initial conviction were not relevant to Bradford's violation of the protection order. The sole issue in the case was the scope of the protection order.

{¶24} Having determined that these statements were improperly admitted, we must determine what effect, if any, their admission had on the outcome. Because Bradford objected to these statements, we review for harmless error. *State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 18. Under this standard, the

8

admission of other-acts evidence is harmless when there is no reasonable possibility that the evidence contributed to the conviction. *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 177.

{¶25} In *State v. Fuchs*, the court reversed Fuchs's conviction for violating a protection order due to the ineffectiveness of trial counsel. *State v. Fuchs*, 2d Dist. Montgomery No. 27873, 2019-Ohio-4294, ¶ 22 ("State's Exhibit 4 included unfairly prejudicial evidence of other acts, and we find that Fuchs's trial counsel rendered ineffective representation by failing to object to the admission of the exhibit without redactions. We find further that the jury's receipt of the exhibit gives rise to a reasonable possibility that the outcome of Fuchs's trial would have been different had the exhibit not been introduced into evidence, or had it been entered into evidence only in a redacted form."). Counsel had stipulated that Fuchs was subject to the protection order and was properly served. *Id.* at ¶ 13. Counsel failed to object to the admission of state's Exhibit 4, which was a copy of the protection order and the magistrate's decision which included the facts of the underlying offense that prompted the issuance of the order. *Id.* at ¶ 14. The court found:

> a reasonable probability that the outcome of Fuchs's trial would have been different had State's Exhibit 4 not been admitted into evidence. The protection order itself stated that Fuchs had been engaged in a "pattern of [threatening] conduct," and the magistrate's findings of fact presented the jury with potentially inflammatory descriptions of Fuchs's past behavior. Irrespective of the exhibit's relevance, "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice," and it "may be excluded if its probative

9

value is substantially outweighed" by its redundancy. *See* Evid.R. 403(A)-(B). Here, the magistrate's findings of fact posed a significant risk of causing Fuchs unfair prejudice, but even otherwise, the admission of the exhibit was needlessly cumulative because Fuchs had stipulated to the validity of the protection order and to his previous conviction.

*Id.* at ¶ 17.

{¶26} However, the evidence against Fuchs was contested. One state witness, who lived next to the protected person, testified that she saw Fuchs driving his truck in the neighborhood. *Id.* at ¶ 15. Two other neighbors saw a truck similar to Fuchs's truck but did not see the driver. *Id.* One of Fuchs's witnesses testified that Fuchs and he had been kayaking when the alleged violation occurred, and Fuchs's mother testified that his truck was inoperable that day. *Id.* at ¶ 15.

{¶27} Here, the evidence established that Bradford was on a streetcar platform. Faulks, who knew Bradford, testified that she saw him standing on the platform. Bradford argued that the protection order prohibited him from her office where the initial offense occurred, but did not specify that he was prohibited from the streetcar platforms. Additionally, the trial court gave a limiting instruction to the jury when the testimony was elicited informing the jurors that the testimony is "being admitted to provide context as to the issuance of the civil protection order. It is not received and you may not consider that prior conduct for any other purpose."

{¶28} Based on this record, the impact of any error in admitting the testimony was minimal. Bradford's substantial rights were not prejudiced because there is no reasonable possibility that this evidence contributed to his conviction given the other

evidence presented at trial.

**{¶29}** We overrule the first assignment of error.

## Sufficiency and Manifest Weight

**{¶30}** Next, Bradford contends that his conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence.

**{¶31}** In reviewing a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶32}** As to the weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Glover*, 1st Dist. Hamilton No. C-180572, 2019-Ohio-5211, ¶ 29, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We afford substantial deference to credibility determinations because the factfinder sees and hears the witnesses. *See Glover* at ¶ 30.

**{¶33}** R.C. 2919.27(A)(1) provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to R.C. 2919.26 or 3113.31 of the Revised Code." R.C. 2901.22(C) provides that "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature."

{¶34} Here, Bradford was convicted for violating the following term of the protection order: "1. RESPONDENT SHALL NOT ENTER the residence, school, business, [or] place of employment * * * of the protected persons named in this Order, including the buildings, grounds, and parking lots at those locations."

{¶35} Bradford argues that the evidence was insufficient to establish that the protection order prohibited him from the streetcar platform. Further, he argues that the streetcar platforms are owned by the city of Cincinnati and thus are public spaces which cannot be included in a protection order, that the streetcar operator is inside the streetcar and shielded from a person on the platform by glass and the streetcar itself, and at most the protection order encompassed the streetcar operations headquarters and the streetcars themselves.

{¶36} The plain language of the order prohibits Bradford from entering her place of employment, which includes the buildings, grounds, and parking lots at those locations. Spell is employed as a streetcar operator, thus her place of employment includes the streetcars, and the grounds, which encompasses the platforms. Faulks's testimony that she saw Bradford sitting on the platform at 12th and Vine Streets was sufficient to prove that he violated the protection order.

{¶37} Bradford further argues that the evidence failed to demonstrate beyond a reasonable doubt that he recklessly violated the civil protection order because he left the platform before Spell arrived. However, the protection order prohibits Bradford from entering Spell's place of employment and does not require Spell to be present. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. This is not an exceptional case in which the evidence weighs heavily against

the conviction.

**{¶38}** Accordingly, we overrule the second assignment of error.

## Conclusion

**{¶39}** Having overruled Bradford's two assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER, J.,** concurs.
**BOCK, P.J.,** concurs separately.

**BOCK, P.J.,** concurring separately.

**{¶40}** I agree with the majority that the trial court's admission of the other-acts evidence was harmless. I write separately, however, because I believe that this evidence would have required a reversal had Bradford's presence on the platform been disputed.

**{¶41}** As noted by the majority, the state must establish that the error was harmless beyond a reasonable doubt. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 28; *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15; *see* Crim.R. 52(A). In reviewing for harmless error, we must "excise the improper evidence from the record and then look to the remaining evidence." *Morris* at ¶ 29. And a holding that an error was harmless is appropriate only in cases where there was "either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." *Id.*, quoting *State v. Rahman*, 23 Ohio St.3d 146, 151, 492 N.E.2d 401 (1986), quoting *State v. Ferguson*, 5 Ohio St.3d 160, 166, 450 N.E.2d 265 (1983), fn. 5. Of course, an appellate court should be mindful that we do not "sit as the supreme trier of fact," and instead are tasked with assessing only

"the impact of this erroneously admitted testimony on the jury." *Id.*, quoting *Ferguson* at fn. 5.

{¶42}  To convict Bradford of violating the protection order, the state had to prove that Bradford recklessly entered Spell's place of employment in violation of the protection order. Thus, in addition to proving recklessness and that the platform was part of Spell's place of employment, the state had to prove identity—that the person on the platform was Bradford.

{¶43}  Having reviewed the evidence at trial, I do not believe that there was overwhelming evidence that Bradford was on the platform. The only evidence the state offered to establish that element of the offense was Faulks's testimony. And Faulks's testimony as to how she knew Bradford was vague. Faulks testified that she knew of Bradford because when she was a streetcar operator, a person whose name she did not know sat on a dangerous place on the platform. She did not know who that person was at the time, did not testify that she had ever seen him herself, and did not learn who he was until "the incident that happened to" Spell. Faulks did not specify which incident or how she connected the person who had been sitting on the platform to Bradford. Faulks spotted who she believed was Bradford while she was driving, through the passenger-side window. According to Faulks, she turned on her hazard lights and the person she identified as Bradford looked at the car and ran off.

{¶44}  The other-acts evidence was prejudicial by its very nature. A person throwing urine at another person is vile. In terms of proving identity, I do not believe the state established beyond a reasonable doubt that Spell's testimony about this odious act was harmless. *See Morris* at ¶ 32 ("blatant prejudice may override even a strong case and require a new trial."). While Faulks specifically described the clothing

that the person on the platform wore, she only saw the person on the platform briefly. Moreover, Faulks did not clearly state how she knew Bradford was the person that had thrown urine on Spell or how she identified Bradford. The burden of satisfying the harmless-error standard falls on the state, and the standard is "a standard significantly more favorable to the defendant." *Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 15, quoting *United States v. Curbelo*, 343 F.3d 273, 286 (4th Cir.2003). Had the issue of identity been properly before us, I would be unable to conclude that the error in this case was harmless.

**{¶45}** On appeal, however, Bradford did not argue that the state failed to prove that he was the person standing on the streetcar platform. Instead, Bradford argued that the platform was not part of Spell's place of employment and that the state failed to prove that Bradford acted recklessly. Because I believe that the evidence definitively established that the streetcar platform was part of Spell's place of employment and that Bradford acted recklessly, I do not believe that the result would have changed had the trial court refused to admit the other-acts evidence.

**{¶46}** Accordingly, I concur separately in the majority's opinion.

Please note:
The court has recorded its own entry this date.